MARION JOAN GAUDETTE, administratrix, *vs.*
RICHARD E. WEBB & others.

Middlesex.     October 6, 1971. — June 5, 1972.

Present: TAURO, C.J., CUTTER, SPIEGEL, REARDON, QUIRICO, BRAUCHER,
& HENNESSEY, JJ.

*Limitations, Statute of.  Conscious Suffering.  Death.  Executor and
Administrator,* Action for death.  *Minor.  Damages,* For death.

In an action in tort for conscious suffering and death of the plaintiff's
intestate, although G. L. c. 229, § 6, permits the joinder of separate
counts for death and for conscious suffering, nevertheless they are
separate causes of action.  [62]

A cause of action for conscious suffering of one fatally injured in an
automobile accident survived his death under G. L. c. 228, § 1, and
vested in his personal representative; and where the injured person
died within two years after the accident but his personal represen-
tative was not appointed until after the expiration of that period,
an action by the personal representative for the conscious suffering
was not barred by the two year limitation in c. 260, § 4, and, under
c. 260, § 10, was seasonably brought when commenced within two
years after the personal representative's giving bond.  [62–63]

G. L. c. 260, § 10, does not apply to actions for wrongful death brought
under c. 229, § 2.  [64]

Review of authorities dealing with the source of the right to recover
for wrongful death.  [67–71]

The right to recover for wrongful death is of common law origin
[71]; prior decisions holding that the origin of such right is
solely statutes creating the right as well as the remedy are to be
followed no longer [71].

Statutes limiting the period for bringing actions for wrongful death
are to be construed in the same manner as the limitations in G. L.
c. 260, the general statute of limitations, and in appropriate cases
they may be tolled by various provisions of G. L. c. 260; prior
decisions to the contrary are no longer to be followed.  [71]

Under G. L. c. 260, § 7, an action for wrongful death brought by the
decedent's personal representative for the benefit of his children at
a time when they were still minors, although more than two years
after the decedent's death as a result of an automobile accident,
was seasonably brought.  [71–72]

In an action for wrongful death, where the decedent's wife had let
the two year statute of limitations expire before seeking appoint-
ment as his administratrix, she could not take advantage of the
tolling provision of G. L. c. 260, § 7, applicable only to their minor
children and was barred in her individual capacity from receiving
any proceeds of the action; however, such disqualification should
not operate as a windfall to the defendants and the damages recov-

erable should not be reduced by the amount allocable to her, but should be in full for the sole benefit of the minor children.  [72–74]

TORT. Writ in the Superior Court dated March 6, 1970.

A motion to dismiss was heard by *Campbell,* J.

*Allan Robinson* (*Louis M. Saab* with him) for the plaintiff.

*Frank P. Hurley* for the defendants.

QUIRICO, J.   This is an action in tort seeking recovery from three defendants for the conscious suffering and death of the plaintiff's intestate, Joseph Francis Gaudette (Gaudette) as the result of a collision of two motor vehicles.   The declaration is in twelve counts, two against each defendant for the death of Gaudette, and two against each defendant for his conscious suffering.[1] The case is here on the plaintiff's exception to the allowance of the defendants' pre-trial motion that "the causes of action set forth in plaintiff's amended declaration be dismissed, on the ground that the statute of limitations as to each of said actions had expired before the same were commenced."

The facts relied on by the defendants for their motion to dismiss are all apparent on the face of the plaintiff's declaration and they are as follows.   Gaudette died on April 15, 1967, as the result of injuries which he sustained on that day in the collision of an automobile driven by him and a tractor-trailer unit driven by the

---

[1] The following tabulation will help to identify the nature of the claims and the defendants involved in the twelve counts.

| Nature of claim | NAMES OF DEFENDANTS AND COUNT NUMBERS | | |
| --- | --- | --- | --- |
| | Richard E. Webb | Blue Line Express Company | Maislin Brothers Transport, Limited |
| Death: Negligence | 1 | 5 | 9 |
| Death: Wilful, Wanton and Reckless conduct | 2 | 6 | 10 |
| Conscious suffering: Gross negligence | 3 | 7 | 11 |
| Conscious suffering: Negligence | 4 | 8 | 12 |

defendant Webb allegedly on the business of the two corporate defendants. Gaudette was survived by his widow and three minor children. The widow was appointed administratrix of Gaudette's estate on March 4, 1970, and on the same date she gave the required bond for the discharge of her trust in that capacity. This action was started by a writ dated March 6, 1970, served on the defendants on March 9, 1970, and entered in the Superior Court on May 4, 1970.

The question for our decision is whether, as matter of law, the statute of limitations had run against the causes of action for which this action was brought. Although G. L. c. 229, § 6, as amended through St. 1958, c. 238, § 5, permits the joinder of separate counts for death and for conscious suffering in a single action, they are separate causes of action. *Finnegan* v. *Checker Taxi Co.* 300 Mass. 62, 69, and cases cited. *Goltz* v. *Besarick,* 313 Mass. 14, 15. We shall therefore consider the two causes of action separately.

1. *Conscious Suffering.* Under G. L. c. 260, § 4, as amended through St. 1965, c. 302, "actions of tort for bodily injuries or for death the payment of judgments in which is required to be secured by chapter ninety . . . shall be commenced only within two years next after the cause of action accrues." This provision applies to the present action, since it arises out of such an automobile accident. See *Bickford* v. *Furber,* 271 Mass. 94, 96; *DeCosta* v. *Ye Craftsman Studio Inc.* 278 Mass. 315, 317. Had Gaudette lived, he could have commenced an action at any time up to April 15, 1969, which was two years after the date of the accident, for his personal injuries and suffering.

If Gaudette continued to live for any period of time after he was injured, and consciously suffered pain during that period, he had a cause of action for such conscious suffering caused to him by the negligence of the defendants. Such a cause of action would survive his death by virtue of G. L. c. 228, § 1, as appearing in St. 1934, c. 300, § 1, which provides in part that "In addi-

tion to the actions which survive by the common law, the following shall survive:— . . . Actions of tort . . . for assault, battery, imprisonment or other damage to the person." If Gaudette consciously suffered pain before his death, "A right of action simultaneous with the injury [negligently caused by the defendants] accrued to . . . [him], 'as a person in *esse,* and . . . [his] subsequent death does not defeat it, but, by operation of the statute, vests it in the personal representative.' " *Battany* v. *Wall,* 232 Mass. 138, 140. *Royal Indem. Co.* v. *Pittsfield Elec. Co.* 293 Mass. 4, 7–8. *Campbell* v. *Romanos,* 346 Mass. 361, 367.

The plaintiff, as Gaudette's personal representative, obviously could not bring an action for conscious suffering within two years after the cause of action accrued because she was not appointed administratrix until March 4, 1970, almost three years after the date of the accident. However, she has the benefit of G. L. c. 260, § 10, which provides in part that *"If* a person entitled t ) bring . . . any action before mentioned dies before the expiration of the time hereinbefore limited . . . and *the cause of action by law survives, the action may be commenced by the executor or administrator* at any time within the period within which the deceased might have brought the action or *within two years after his giving bond for the discharge of his trust"* (emphasis supplied). The plaintiff's bond as administratrix was approved on March 4, 1970. She started this action on March 6, 1970, and it was therefore within the time permitted by § 10 quoted above. It was error to dismiss the plaintiff's counts for Gaudette's conscious suffering.

2. *Wrongful Death.* The wrongful death statute in effect at the time of Gaudette's death, G. L. c. 229, § 2, as appearing in St. 1958, c. 238, § 1, as amended through St. 1965, c. 683, § 1, provided, in pertinent part, that "[a]n action to recover damages under this section shall be commenced *within one year from the date of death or within such time thereafter as is provided by sections four,* four B, nine or ten of chapter two hundred and

sixty" (emphasis added). As noted earlier in this opinion, G. L. c. 260, § 4, as amended through St. 1965, c. 302, which requires commencement of tort actions arising out of certain automobile accidents "within two years next after the cause of action accrues," is applicable to this case. See *Bickford* v. *Furber*, 271 Mass. 94, 96; *DeCosta* v. *Ye Craftsman Studio Inc.* 278 Mass. 315, 317. The cause of action for death "accrued at the time of . . . [Gaudette's] death." *Bickford* v. *Furber, supra*, p. 97. *Wescott* v. *Henshaw Motor Co.* 275 Mass. 82, 85. In this case the death occurred on April 15, 1967, and therefore the time for bringing the plaintiff's action for wrongful death would have expired on April 15, 1969, unless it was extended by the tolling provisions of G. L. c. 260.

The plaintiff first argues that such time was extended by G. L. c. 260, § 10, but that provision applies only to actions which "the deceased might have brought." As such it does not apply to wrongful death actions, which may be brought only "by the executor or administrator of the deceased." G. L. c. 229, § 2, as appearing in St. 1958, c. 238, § 1. Nothing appearing in the case of *Noon* v. *Beford*, 349 Mass. 537, relied upon by the plaintiff, is to the contrary.

The second provision relied upon by the plaintiff is G. L. c. 260, § 7, which tolls the statute of limitations in part if a person is a "minor . . . when a right to bring an action first accrues." This Commonwealth has long subscribed to the rule that there is no common law right to civil recovery for death, and that any right to such recovery is solely a creation of the statutes.[2] As such, the period of limitation appearing in our wrongful death

[2] This rule was first adopted by this court in 1848 in *Carey* v. *Berkshire R.R.* 1 Cush. 475, 477, following *Baker* v. *Bolton*, 1 Campb. 493. The *Carey* case was subsequently followed by numerous decisions of this court. See, e.g., *Kearney* v. *Boston & Worcester R.R.* 9 Cush. 108, 109; *Moran* v. *Hollings*, 125 Mass. 93; *Worcester & Suburban St. Ry.* v. *Travelers Ins. Co.* 180 Mass. 263, 265; *Sherlag* v. *Kelley*, 200 Mass. 232, 234; *Duggan* v. *Bay State St. Ry.* 230 Mass. 370, 375–376; *Arruda* v. *Director Gen. of Railroads*, 251 Mass. 255, 260–261; *Foynes* v. *New York Cent. R.R.* 276 Mass. 89, 90.

statute has been held to be "a limitation upon the right as well as upon the remedy, and the right was lost when . . . [the period of limitation] expired." *Bickford* v. *Furber*, 271 Mass. 94, 97, and cases cited. In the *Bickford* case we held that the tolling provision in G. L. c. 260, § 10 (which extended the time for commencing an action in case of the death of "a person entitled to bring or liable" thereto), was not applicable in a wrongful death action, even though the limitation set forth in G. L. c. 260, § 4, was held to apply to the case. In so ruling, we said, at p. 99: "This section is a part of the general statute of limitations and does not apply where 'a special provision is otherwise made relative to the limitation of any action.' G. L. c. 260, § 19. . . . The limitation imposed by G. L. c. 229, § 5, as amended [now G. L. c. 229, § 2] incorporating a part of G. L. c. 260, § 4, as amended, is special, since, in form, it is included in the statute creating the right and, in substance, is a limitation of the right as well as of the remedy." [3]

The reasoning in the *Bickford* case was subsequently followed by the court in *Wescott* v. *Henshaw Motor Co.* 275 Mass. 82, 86 (holding that G. L. c. 260, § 9, which tolls the statute of limitations while the defendant is residing out of the Commonwealth, was not applicable to an action for wrongful death), and was more recently referred to with approval, although not applied, in *Noon* v. *Beford*, 349 Mass. 537, 540–541, decided in 1965. The tolling provision for minors, appearing in G. L. c. 260, § 7, is also part of the general statute of limitations and, if we were to follow the reasoning of the cases just discussed, that provision would also be inapplicable to actions for wrongful death. See Developments in the Law,

---

In addition the rule has been recognized in numerous other cases which have not cited the *Carey* decision. See, e.g., *Porter* v. *Sorell*, 280 Mass. 457, 459; *Melnik* v. *Perwak*, 295 Mass. 512, 514; *Oliveria* v. *Oliveria*, 305 Mass. 297, 300–301; *Dermody* v. *Utley*, 328 Mass. 209, 211; *Alden* v. *Norwood Arena, Inc.* 332 Mass. 267, 276.

[3] Subsequent to the *Bickford* decision the wrongful death act was amended to make specific reference to G. L. c. 260, § 10. See St. 1937, c. 406, § 3, and the discussion in *Noon* v. *Beford*, 349 Mass. 537, 541.

Statutes of Limitations, 63 Harv. L. Rev. 1177, 1234 (1950).

Despite the seeming hopelessness of the plaintiff's cause of action for death in the light of the formidable array of adverse judicial precedents reviewed above, she argues, through counsel, more on the basis of common sense and fairness than on the basis of adherence to legal precedents, and perhaps despite the precedents, that the law should find some way to afford a remedy for redress of the legal wrongs of the defendants, even if the remedy is limited to the three minor children of the deceased. She urges that this court "release itself, *in the interest of justice,* from the thongs of mortmain which have bound for too long a time the law of torts in this Commonwealth." This, in effect, is a request that we depart from the doctrine of stare decisis to the extent necessary to afford relief in this and like cases.

As we view this case, there are several rules of law which stand as obstacles to the plaintiff's action for wrongful death. The first is the rule that there is no common law basis for a cause of action for death, and that such a cause of action in this Commonwealth is wholly a creature of our death statutes.[4] The second is the rule that since the cause of action is a creature of the

---

[4] A brief review of the origins and history of our present death statutes may be helpful at this point.

Perhaps the earliest of these statutes is found in Prov. St. 1693–1694, c. 6, § 6, providing that "if . . . any person happen to lose his life" by reason of a defect in a highway, causeway or bridge, the municipality responsible for the defect "shall pay unto the parents, husband, wife, children, or next of kin to any person so losing his or her life the sum of one hundred pounds." See now G. L. c. 229, § 1, as amended. By St. 1840, c. 80, various carriers causing death to a passenger by reason of their negligence or gross negligence were made liable "to a fine not exceeding five thousand dollars, nor less than five hundred dollars, to be recovered by indictment . . . for the benefit of . . . [the deceased person's] widow and heirs." See now G. L. c. 229, § 2, as amended. By St. 1887, c. 270, § 3, certain employers were made liable for up to $5,000 "to be assessed with reference to the degree of culpability of the employer" for their negligence causing death to an employee. See now G. L. c. 229, § 2B, as amended. By St. 1897, c. 416, gas and electric light corporations were made liable in damages on the same basis for their negligence or gross negligence causing death to persons other than their employees. Finally, by St. 1898, c. 565, persons and corporations generally were made liable for damages up to $5,000, again

death statute, it exists only for the period limited by the death statute, after the expiration of which period there is not only no remedy to enforce the right but there is no right. The third is the rule that because the death statute places a limit on the existence of the right, the tolling provisions of the general statute of limitations (G. L. c. 260) are not available to the plaintiff in an action for wrongful death. We shall consider each of these three rules separately.

One of the earliest decisions of this court to the effect that there is no right of recovery for death at common law was *Carey* v. *Berkshire R.R.* 1 Cush. 475, decided in 1848. This was "an action on the case" to recover damages for the death of the plaintiff's husband due to the negligence of the defendant by whom he was employed. The court noted that the only statute then in effect (St. 1840, c. 80) applied only to recovery for the death of a passenger due to the negligence of a carrier, and said of that statute (p. 480): "The penalty, when thus recovered, is conferred on the widow and heirs, not as damages for their loss, but as a gratuity from the commonwealth."[5] The court then denied recovery simply because there was no precedent for it. Thus for want of a precedent, a right was denied, and the court did not consider whether it

---

based upon the degree of culpability, for their negligence or gross negligence causing death to persons not their employees. See now G. L. c. 229, § 2, as amended.

By St. 1947, c. 506, §§ 1, 1A, recovery was changed to a compensatory basis, but by St. 1949, c. 427, the punitive approach was reinstated. With the exception of this two year period wrongful death damages in Massachusetts have continued to the present day to be awarded on a "punitive" basis, i.e., computed with reference to the degree of culpability of the defendant. See, e.g., St. 1907, c. 375; St. 1922, c. 439; St. 1925, c. 346, § 9; St. 1946, c. 614; St. 1951, c. 250; and the current G. L. c. 229, § 2, as amended through St. 1971, c. 801, § 1.

[5] This statement appears to embody a legal fiction which was repeated as late as 1922 in the decision of *Sterling* v. *Frederick Leyland & Co. Ltd.* 242 Mass. 8, 13, saying: "The remedy under the [death] statute is the imposition of a penalty upon the defendant for negligently causing the death of a human being, which is ordered paid by way of gratuity for the beneficiaries named in the act." Whatever the necessity for attempting to explain or justify recovery for wrongful death in 1848 or in 1922, there is no such necessity today. There is no element of "gratuity" in the payment of damages by a wrongdoer or in their recovery by victims of the wrongdoing.

should establish a precedent by granting the right. The court then continued (p. 478) : "But it is not necessary to rely entirely on this negative evidence. For we find it adjudged, in *Baker* v. *Bolton* . . . 1 Campb. 493, that the death of a human being is not the ground of an actic for damages. In that case . . . Lord Ellenborough . . announced the principle of his decision, in these word: : 'In a civil court, the death of a human being cannot be complained of as an injury.' Such, then, we cannot doubt, is the doctrine of the common law; and it is de- cisive against the maintenance of these actions."

The statement that the common law did not permit re- covery for death has since been repeated in many deci- sions of this court and in decisions of courts of other jurisdictions.[6] Many of these decisions recognize *Baker* v. *Bolton*, 1 Campb. 493, decided in 1808, as the apparent basis for this doctrine. However, because Lord Ellen- borough's decision in that case stated no basis for the doctrine which he announced, there has been much dis- cussion and speculation in decisions and scholarly writ- ings as to what its basis might have been. There are some suggestions that the decision is founded upon the "felony-merger" doctrine, and others that its basis lies in the principles governing survival of actions at common law. Yet, as expressly recognized by this court in *Carey* v. *Berkshire R.R.* 1 Cush. 475, 478, the felony-merger doctrine "has no application . . . [if] there is . . . no felony, in which a private injury can merge." In *Baker* v. *Bolton, supra,* the death of the deceased was allegedly due to the *negligence* of the defendant and accordingly, by the reasoning of this court in the *Carey* case, *supra,* the felony-merger doctrine could not have formed the basis of the decision in *Baker* v. *Bolton*. Similarly, the

---

[6] For some of the decisions of this court, see footnote 2 of this opinion, and for a collection of decisions of other courts see Malone, The Genesis of Wrongful Death — The Cary Decision and the Turn of the Tide, 17 Stanford L. Rev. 1043, 1067–1073. In referring to the *Carey* decision, Professor Malone said at p. 1067 that it "was as unpre- cedented in America as *Baker* v. *Bolton* had been in England" and that "the Massachusetts decision set the pattern for all similar holdings throughout the country."

common law principles governing survival of actions could have no applicability to an action brought by the dependents or heirs of the deceased in their own right for damage directly suffered by them as a result of the defendant's wrongdoing.

The lack of any discernible basis for the doctrine of *Baker* v. *Bolton,* and the harsh results it frequently produced, prompted bitter criticism of the decision in England. This criticism and the origin of the doctrine itself were recently reviewed in a scholarly opinion by Justice Harlan, speaking for the unanimous court in *Moragne* v. *States Marine Lines, Inc.* 398 U. S. 375, 409, which overruled several earlier decisions which had applied that doctrine. See *The Harrisburg,* 119 U. S. 199, and *The Tungus* v. *Skovgaard,* 358 U. S. 588.

In the *Moragne* decision the court said (pp. 381–382) : "One would expect, upon an inquiry into the sources of the common-law rule, to find a clear and compelling justification for what seems a striking departure from the result dictated by elementary principles in the law of remedies. Where existing law imposes a primary duty, violations of which are compensable if they cause injury, nothing in ordinary notions of justice suggests that a violation should be nonactionable simply because it was serious enough to cause death. On the contrary, that rule has been criticized ever since its inception, and described in such terms as 'barbarous.' Because the primary duty already exists, the decision whether to allow recovery for violations causing death is entirely a remedial matter."

After further criticism of the doctrine of *Baker* v. *Bolton,* Justice Harlan added (p. 386) : "The most likely reason that the English rule was adopted in this country without much question is simply that it had the blessing of age. . . . The American courts never made the inquiry whether this particular English rule, bitterly criticized in England, 'was applicable to their situation,' and it is difficult to imagine on what basis they might have concluded that it was."

The opinion then took note of the numerous State and

Federal statutes which now permit recovery for wrongful death, and continued (p. 390) : "These numerous and broadly applicable statutes, taken as a whole, make it clear that there is no present public policy against allowing recovery for wrongful death. The statutes evidence a wide rejection by the legislatures of whatever justifications may once have existed for a general refusal to allow such recovery. This legislative establishment of policy carries significance beyond the particular scope of each of the statutes involved. The policy thus established has become itself a part of our law, to be given its appropriate weight not only in matters of statutory construction but also in those of decisional law. See Landis, Statutes and the Sources of Law, in Harvard Legal Essays 213, 226–227 (1934)." [7]

A similar view was expressed by Roscoe Pound in Comments on Recent Important Admiralty Cases, 13 NACCA L. J. 162, 189 (1954), in which he stated that "[t]o think of recovery for wrongful causing of death as something exceptional not to be treated as part of the general law but to be provided for specifically as to application to every item of recent legislative improvement of the law is an anachronism. Today we should be thinking of the death statutes as part of the general law." See *Cox* v. *Roth*, 348 U. S. 207, 210.

Based upon its view that recovery for wrongful death had now become a part of our common law, the court in the *Moragne* case held that there was a common law right to recovery for wrongful death under general maritime law. The court's decision was founded in large part upon the general prevalence of nonmaritime wrongful

---

[7] At this point in the opinion Justice Harlan quoted the following language from the dissenting opinion of Justice Holmes, speaking also for Chief Justice Taft and Justices Brandeis and McKenna, in *Panama R.R.* v. *Rock*, 266 U. S. 209, 216: "Without going into the reasons for the notion that an action . . . does not lie for causing the death of a human being, it is enough to say that they have disappeared. The policy that forbade such an action, if it was more profound than the absence of a remedy when a man's body was hanged and his goods confiscated for the felony, has been shown not to be the policy of present law by statutes of the United States and of most if not all of the States."

death statutes, and it is thus applicable with equal force to nonmaritime actions for wrongful death.

Upon consideration of the *Moragne* decision and the sound reasoning upon which it is based, we are convinced that the law in this Commonwealth has also evolved to the point where it may now be held that the right to recovery for wrongful death is of common law origin, and we so hold. To the extent that *Carey* v. *Berkshire R.R.* 1 Cush. 475, and any other prior decisions of this court conflict with our present holding, those decisions are no longer to be followed.

Consequently, our wrongful death statutes will no longer be regarded as "creating the right" to recovery for wrongful death. They will be viewed rather as: (a) requiring that damages recoverable for wrongful death be based upon the degree of the defendant's culpability; (b) prescribing the range of the damages recoverable against each defendant; (c) requiring that any action for wrongful death be brought by a personal representative on behalf of the designated categories of beneficiaries; and (d) requiring that the action be commenced within the specified period of time, as a limitation upon the remedy and not upon the right. We further hold that statutes limiting the period for bringing actions for death are to be construed in the same manner as the limitations contained in G. L. c. 260, the general statute of limitations, and that in appropriate cases they may be tolled by the various provisions of G. L. c. 260. To the extent that the cases of *Crosby* v. *Boston Elev. Ry.* 238 Mass. 564, *Sterling* v. *Frederick Leyland & Co. Ltd.* 242 Mass. 8, *Bickford* v. *Furber*, 271 Mass. 94, *Westcott* v. *Henshaw Motor Co.* 275 Mass. 82, and any other prior decisions of the court conflict with our present holding, those decisions are no longer to be followed.

In this case the plaintiff's action for wrongful death was brought in behalf of the three minor children of the deceased. Under G. L. c. 260, § 7, "If the person entitled thereto is a minor . . . when a right to bring an action first accrues, the action may be commenced within the

time hereinbefore limited after the disability is removed."
Although this provision does not expressly refer to "repre-
sentative" actions, such as the wrongful death action in
this case, we construe it to apply to such actions. By its
terms, the statute speaks first of persons "entitled
thereto" and subsequently imparts meaning to this phrase
via the language "when *a right to bring an action* first
accrues" (emphasis added). Since Gaudette died inte-
state, the wrongful death action in this case could have
been prosecuted only by the administrator or administra-
trix of his estate. G. L. c. 229, § 2. Being minors,
Gaudette's children were disabled from seeking their own
appointment as administrators and thus from prosecut-
ing such a claim. See G. L. c. 193, §§ 1, 8; *McDonald* v.
*O'Dea*, 256 Mass. 177, 178–179. See, generally, annota-
tion, 8 A. L. R. 3d. 590. They depended upon their
mother to proceed in their behalf.

Recovery under the wrongful death statute by their
mother is in part intended "to the use of" the children of
the deceased. G. L. c. 229, § 1 (3). As administratrix,
she acts merely as a representative or conduit for the
children's recovery, much like a next friend for a minor
plaintiff. In a very real sense, therefore, it is the chil-
dren's cause of action. Accordingly, G. L. c. 260, § 7,
would operate to toll the running of the statute as to their
right to recovery through a representative just as it
would toll its running if their right of action were direct.

The foregoing interpretation of G. L. c. 260, § 7, would
not permit recovery by the mother for her personal bene-
fit. Having let the statute of limitations expire before
seeking appointment as administratrix, she should not be
allowed to take advantage of the tolling provision ap-
plicable only to her minor children. She would thus be
barred in her individual capacity from receiving from
the estate of her deceased husband the one-third share of
the proceeds of the death action which would otherwise be
allocable to her.[8] However, her disqualification from

---

[8] The counts for wrongful death in the plaintiff's declaration speak
only of seeking recovery for the benefit of the children and make no

receiving this share of the proceeds should not operate as a windfall to the defendants.   By application of the rule which we discussed in *O'Connor* v. *Benson Coal Co.* 301 Mass. 145, 148–149,[9] if the administratrix is entitled to recover on the counts for death, the damages recoverable

mention of recovery for the benefit of the widow.   It does not appear that the widow administratrix is seeking recovery in her own behalf.

[9] In the *O'Connor* case we discussed the question whether a beneficiary under the wrongful death act would be barred by his own contributory negligence from sharing in any recovery which might be had.   There we stated (at pp. 148–149) :  "Our own death statute provides that action be brought by the executor or administrator and that damages be assessed with reference to the degree of culpability of the defendant or of that of his agents or servants.   G. L. (Ter. Ed.) c. 299, § 5. Its primary purpose is punishment proportionate to the degree of blame inherent in the wrongful act for which the defendant is liable. *Porter* v. *Sorell,* 280 Mass. 457.   In that case at page 462 we said, 'This court cannot by construction add a limitation on punishment which the Legislature did not see fit to establish.'  See also *Boott Mills* v. *Boston & Maine Railroad,* 218 Mass. 582; *Putnam* v. *Savage,* 244 Mass. 83; *Macchiaroli* v. *Howell,* 294 Mass. 144.   Liability based upon the degree of culpability of the defendant cannot be varied according to the number of beneficiaries who are guilty or innocent.   Compare *Brown* v. *Thayer,* 212 Mass. 392, 399.   There is no way in which damages can be either wholly denied or reduced because of the contributory negligence of one or more out of a group of beneficiaries without violating the statute.   We therefore conclude that, at least when there is one beneficiary whose fault did not contribute to the death, recovery can be had without regard to the fault of other beneficiaries.   It does not necessarily follow that beneficiaries who are at fault can share in the distribution by the executor or administrator of the money recovered.   Compare *McCarthy* v. *William H. Wood Lumber Co.* 219 Mass. 566, 568.   It may be that the attitude of the common law toward a wrongdoer will be carried over to affect the statutory right, so that the proceeds of recovery must be distributed among the innocent beneficiaries alone as if the guilty beneficiaries did not exist. This is the rule laid down in Am. Law Inst. Restatement: Torts, § 493, Comment a (second paragraph).   See *Slocum* v. *Metropolitan Life Ins. Co.* 245 Mass. 565, 570."

This same position is taken in Restatement 2d: Torts, § 493, comment a (second paragraph), which, referring specifically to "punitive" wrongful death statutes, states:  "There is another type of death statute under which the amount recoverable is fixed, not by the benefit which the survivors would have derived from the continued life of the decedent, but by the gravity of the defendant's fault.   Under such a statute, the contributory negligence of one of the beneficiaries neither prevents the maintenance of the action nor affects the amount recoverable.   Its effect is to eliminate the negligent beneficiary from the group among which the amount recovered is to be divided, such amount being divided among the innocent beneficiaries as though the negligent beneficiary did not exist."

While the *O'Connor* case, *supra,* did not ultimately decide the question of distribution of recovery, in our view the rule discussed therein and in Restatement 2d: Torts, is sound.   It applies with equal force and logic to the circumstances presented in the instant case.   We realize that, as in the *O'Connor* case, the question of the distribution of

should not be reduced by the amount allocable to the mother, but rather the full amount may be recovered for the sole benefit of the minor children.

For the foregoing reasons we hold that it was error to dismiss the plaintiff's counts for wrongful death.

*Exceptions sustained as to all counts.*

---

any recovery which might ultimately be had is not now before us. However, under the principle referred to in *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 731, and cases cited, we express our opinion on this subject in the hope that by so doing we may prevent further litigation between the parties.