# United States Court of Appeals
## For the First Circuit

No. 18-1779

GGNSC ADMINISTRATIVE SERVICES, LLC; GOLDEN GATE NATIONAL SENIOR
CARE, LLC; GGNSC HOLDINGS, LLC; GGNSC CHESTNUT HILL, LLC, d/b/a
Golden Living Center - Heathwood,

Plaintiffs, Appellees,

v.

JACKALYN M. SCHRADER, as the personal representative of the
estate of Emma J. Schrader,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Howard, Chief Judge,
Lynch and Lipez, Circuit Judges.

John Vail, with whom John Vail Law, PLLC, Daniel T. Landry,
David J. Hoey, and Law Offices of David J. Hoey, P.C. were on
brief, for appellant.
William Alvarado Rivera, Meryl D. Grenadier, and Kelly R.
Bagby on brief for AARP and AARP Foundation, amici curiae.
Robert E. Curtis, Jr. on brief for Massachusetts Advocates
for Nursing Home Reform, amicus curiae.
Joseph M. Desmond, with whom Justin L. Amos and Morrison
Mahoney LLP were on brief, for appellees.

February 26, 2019

**LYNCH**, **Circuit Judge**. This case is about arbitration agreements, nursing homes, and wrongful death claims under Massachusetts law. A set of organizations (collectively, GGNSC) that oversees the Golden Living Center Heathwood (Heathwood) in Chestnut Hill sued in federal court to compel arbitration of an underlying state wrongful death action brought by the personal representative of a deceased former Heathwood resident. The federal court compelled arbitration and declined to issue a stay of the state wrongful death action. GGNSC Chestnut Hill LLC v. Schrader, No. CV 16-10525-DPW, 2018 WL 1582555, at *9-10 (D. Mass. Mar. 31, 2018). Whether arbitration was required turns on how state law characterizes wrongful death actions.

The personal representative appeals. She argues that as the plaintiff in the wrongful death suit, under state law, she is not bound by the decedent's agreement to arbitrate with GGNSC because her wrongful death right of recovery is independent of the decedent's wrongful death claim. GGNSC argues, to the contrary, that Massachusetts beneficiaries' wrongful death claims are derivative of the decedent's wrongful death claim, and so the arbitration agreement is binding. Because that dispute turns on the characterization of wrongful death actions by the Commonwealth, we certify questions to the Massachusetts Supreme Judicial Court (SJC) under its Rule 1:03. See Bos. Gas Co. v. Century Indem. Co., 529 F.3d 8, 15 (1st Cir. 2008).

- 3 -

The parties do not dispute the relevant facts, which we take largely from the district court opinion. Emma Schrader was brought by ambulance to Heathwood in February 2013. After Emma's admission and treatment, Jackalyn M. Schrader (Schrader), Emma's daughter and appellant here, signed several documents for her mother, including a standard (undated) "Alternative Dispute Resolution Agreement" (Agreement). Schrader had authority to sign these documents on her mother's behalf -- on September 11, 2011, Emma had executed a document granting Schrader her power of attorney.

The Agreement states in bold letters that a signature on the Agreement is not a condition of admission to or continued residence in the facility. It also says that the resident may revoke "the Agreement by sending written notice to [Heathwood] within thirty (30) days of signing it." The Agreement form has two signature lines: one to accept and one to decline. Schrader signed the accept line.

The Agreement provides that any dispute covered by the Agreement "shall be resolved exclusively by an ADR process that shall include mediation and, where mediation is not successful, binding arbitration." The Agreement applies to "the Resident," a term that the Agreement defines to include "all persons whose claim is or may be derived through or on behalf of the Resident,

including <u>any</u> next of kin, guardian, <u>executor, administrator</u>, legal representative, or heir of the Resident, and any person who has executed this Agreement on the Resident's behalf."[1]

Emma died on December 3, 2013. Schrader brought a wrongful death action against GGNSC in Massachusetts state court on February 4, 2016.[2] The state complaint alleges that Schrader brought the action as the personal representative of Emma's estate "on behalf of the heirs of the decedent." And it alleges that Emma's injuries were "injuries for which she would have been entitled to bring an action had she survived, and the right to bring such action survives her." The injuries alleged were a "preventable sacral decubitus" and resulting pain and suffering, which eventually required surgery and transfer to a special care facility, and from which Emma never recovered.

GGNSC then brought this federal court action on March 15, 2016, under the Federal Arbitration Act to compel Schrader to arbitrate the dispute. The district court granted the motion to compel. <u>Schrader</u>, 2018 WL 1582555, at *10. The district court

---

[1]    GGNSC has never argued that Jackalyn's wrongful death claims are subject to the Agreement's mandatory arbitration provision because she is the "person who has executed th[e] Agreement on the Resident's behalf."

[2]    Jackalyn says she also brought a negligence claim. The district court treated this case as only concerning wrongful death, finding the two claims to be equivalent for these purposes. The parties have done the same on appeal, so we do too.

first found that there was a valid contractual agreement to arbitrate, id. at *4, and that the agreement was neither procedurally nor substantively unconscionable under Massachusetts law, id. at *5. Schrader has not appealed those conclusions, so we take them as established fact.

The district court next considered whether Schrader's wrongful death claims, which she brought in her capacity as personal representative of her mother's estate, were derivative of claims that Emma could have brought such that the claims were subject to arbitration. Id. at *6. Schrader contended that her wrongful death claims were not subject to the Agreement because a wrongful death beneficiary's claims are independent of any claims falling within the scope of the Agreement. Id.

Both parties argued that the issue turned on Massachusetts state law. As no state opinion clearly decided the issue, the district court made an informed prediction that the SJC would hold that "a wrongful death claim is a derivative claim as to which the decedent's representatives and beneficiaries would be bound by [the decedent's] agreement to arbitrate." Id. at *8. The district court highlighted several reasons for its conclusion: First, claimants "can only recover if the decedent died under such circumstances that the deceased could have recovered damages for personal injuries if his death had not resulted." Id. at *7 (internal quotation marks omitted). Second, "the elements in a

wrongful death claim mirror the elements necessary to prove negligence had the decedent survived," so, "effectively," "there would be no cause of action unless the decedent could have sued." Id. at *7 n.3. And third, under Massachusetts law, one can only bring a "wrongful death claim as the executor or administrator of the decedent's estate." Id. at *7. The district court added that, though the issue was one that might yield a different outcome from state to state, "the weight of persuasive authority treats wrongful death claims as derivative." Id. at *8.

After this, Schrader, for the first time, asked the district court for certification to the SJC. GGNSC Chestnut Hill LLC v. Schrader, No. CV 16-10525-DPW, 2018 WL 3405339, at *1 (D. Mass. July 12, 2018). The district court declined to certify any question at the "thirteenth-hour." Id.

## II.

This court may, on its own motion, certify questions to the SJC when those questions may be determinative of the pending cause of action and when there is no controlling precedent that answers them. Hundley v. Marsh (In re Hundley), 603 F.3d 95, 98 (1st Cir. 2010); Mass. S.J.C. R. 1:03. This case meets both conditions. Because the Agreement's enforceability as to Schrader's claims turns on important issues of state law, including statutory interpretation, common law, and matters of policy, we think it best to certify questions to the SJC.

- 7 -

We begin with background. "[A]rbitration is a matter of contract." Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67 (2010). State contract law controls "who is bound by [arbitration agreements]." Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630 (2009). We look to Massachusetts law to determine whether Schrader, in bringing the wrongful death action, is bound by her mother's Agreement to arbitrate claims against GGNSC.[3] Resolution of this state law issue will resolve this federal case.

The parties argue that wrongful death claims are either "independent" (Schrader) or "derivative" (GGNSC) of the claim concerning the decedent's death. Schrader argues that Massachusetts segregates the rights of claimants and gives five independent bases on which a claimant may bring a wrongful death claim. See Mass. Gen. Laws ch. 229, § 2.

GGNSC responds that, in a case, like this one, that is based on Section 2(1) or 2(2) of the wrongful death statute, the plaintiff must prove that the defendant negligently caused the decedent's death. GGNSC argues that because proving wrongful death

---

[3] We reject Schrader's general argument that she, a non-signatory to the Agreement (only having signed it using her mother's power of attorney), cannot be compelled to arbitrate her wrongful death beneficiary claims. Schrader waived this argument by not raising it before the district court. See Vineberg v. Bissonnette, 548 F.3d 50, 57 (1st Cir. 2008). Even absent waiver, the argument lacks merit: There are exceptions to the "general proposition" that "a contract cannot bind a non-party." Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 9 (1st Cir. 2014); see id. at 9-10.

is contingent on proving underlying negligence against the decedent, the beneficiaries' right of recovery must be viewed as derived from the decedent's wrongful death claim. GGNSC highlights that Massachusetts requires that all wrongful death actions be brought by a personal representative of the decedent. And GGNSC adds that its view is consistent with how the SJC has treated analogous claims, and that good policy reasons support its reading.

Schrader responds that, although only a personal representative may bring the suit, "it is the [beneficiary's] cause of action." Gaudette v. Webb, 284 N.E.2d 222, 230 (Mass. 1972). Schrader adds that, under the Massachusetts wrongful death statute, beneficiaries may receive different damages from those that would have been available to a decedent or her estate.

Schrader also argues that Massachusetts law is not unsettled and that it has resolved this question. She says the SJC has consistently viewed wrongful death claims as independent. GGNSC responds that, although Massachusetts may once have viewed its wrongful death action as independent, see, e.g., McCarthy v. Wood Lumber Co., 107 N.E. 439, 440 (1914), later amendments to the wrongful death statute have invalidated that classification. In 1958, the legislature limited recovery under the statute to "such circumstances that the deceased could have recovered damages for personal injury if his death had not resulted." 1958 Mass. Acts 122, ch. 238 § 1. And the SJC has since held that the

Commonwealth's "wrongful death statutes w[ould] no longer be regarded as 'creating the right' to recovery for wrongful death" -- the law had "evolved to the point where it may now be held that the right to recovery for wrongful death is of common law origin." Gaudette, 284 N.E.2d at 229.

We hold that Massachusetts law does not clearly decide the independent/derivative or other relevant questions about the status of wrongful death actions in relation to the decedent. The parties have provided us with no citation to a dispositive case. Our own research reveals that the SJC has most recently reserved the question this case presents. See Johnson v. Kindred Healthcare, Inc., 2 N.E.3d 849, 856 n.14 (Mass. 2014) (declining to address whether "a decedent's agreement to arbitrate future disputes" binds "the statutory beneficiaries of a wrongful death claim").

Even absent controlling precedent, certification may be inappropriate when "the course the state court would take is reasonably clear." Ropes & Gray LLP v. Jalbert (In re Engage, Inc.), 544 F.3d 50, 53 (1st Cir. 2008) (internal quotation marks and alterations omitted). This is not such a case.

It may be that the SJC will conclude that wrongful death claims have both independent and derivative aspects. As noted, in Massachusetts, claims under the first clause of the Massachusetts wrongful death statute require a personal representative to show

- 10 -

negligence against the decedent resulting in death.  See Mass. Gen. Laws ch. 229, § 2.  But as the SJC has noted, "[i]n a very real sense," a wrongful death claim "is the [beneficiary's] cause of action."  Gaudette, 284 N.E.2d at 230.

The issue here has yielded "profound conflict" across the nation.[4]  Restatement (Second) of Judgments § 46 cmt. b.  GGNSC asserts that twenty-seven states find wrongful death claims to be derivative, while fourteen states find them to be independent.  GGNSC adds a wrinkle.  It says that the answer to the independent/derivative question may possibly require addressing another state-law issue.  It argues that at least one state, despite holding that a wrongful death claim is independent, has held that, depending on the facts, such a claim may still be subject to the decedent's arbitration agreement.  See Allen v. Pacheco, 71 P.3d 375, 379 (Colo. 2003) (en banc).

There are also substantial policy considerations at stake.  The SJC has observed that "[l]ike all common-law causes of action, [Massachusetts's] common law of wrongful death evolves to meet changes in the evolving life of the Commonwealth."  Matsuyama v. Birnbaum, 890 N.E.2d 819, 837 (Mass. 2008).  The American

---

[4] Decisions within the District of Massachusetts under Massachusetts law are also split. Compare Schrader, 2018 WL 1582555, with Angelo v. USA Triathlon, No. CIV.A. 13-12177-LTS, 2014 WL 4716195 (D. Mass. Sept. 19, 2014), and Chung v. StudentCity.com, Inc., No. CIV.A. 10-10943-RWZ, 2011 WL 4074297 (D. Mass. Sept. 9, 2011).

Association of Retired Persons (AARP) and Massachusetts Advocates for Nursing Home Reform, amici in favor of reversal, ably highlight numerous issues that may or may not come under the rubric of "changes in the evolving life of the Commonwealth."[5]

Because this case presents an unresolved question of Massachusetts law whose answer is unclear, and because resolving that issue may implicate policy judgments best left to the SJC, we exercise our discretion in favor of certification. See In re Engage, 544 F.3d at 53; see also Steinmetz v. Coyle & Caron, Inc., 862 F.3d 128, 142 (1st Cir. 2017); Showtime Entm't, LLC v. Town of Mendon, 769 F.3d 61, 82 (1st Cir. 2014).

We certify these questions to the Massachusetts SJC:

1.  Is the wrongful death claim of Emma Schrader's statutory heirs derivative or independent of Emma Schrader's own cause of action?

2.  If the answer to the first question does not resolve the issue presented to the federal court, is Jackalyn Schrader's wrongful death claim nonetheless subject to Emma Schrader's Agreement that her "next of kin, guardian, executor, administrator, legal representative, or heir" would arbitrate claims against GGNSC?

---

[5]    AARP argues that nursing facility residents suffer from high rates of abuse and neglect, that federal and state enforcement efforts have inadequately protected those residents, and that arbitration fails to address that culture of abuse and neglect. Massachusetts Advocates for Nursing Home Reform add that the Commonwealth has a public policy interest in maintaining transparency in nursing homes because decisions in litigation are public and that is not necessarily true of arbitrations.

- 12 -

We welcome any additional observations about Massachusetts law that the SJC may wish to offer.

### III.

We direct the Clerk of this court to forward to the Massachusetts SJC, under this court's official seal, a copy of the certified questions and our decision here, and a copy of the briefs and appendix filed by the parties and amici curiae, and a copy of the record filed in the district court, which set forth all facts relevant to the issues certified. We retain jurisdiction pending that court's determination.