Debra A. ELLIS, Administratrix of the Estate of Robert Parker, Effie Parker, Administratrix of the Estate of Janet Parker for the use and benefit of Robin Parker and Penny Parker, both minors, Plaintiffs,

v.

FORD MOTOR COMPANY, Defendant.

Civ. A. No. 85–0019–F.

United States District Court, D. Massachusetts.

Feb. 20, 1986.

James P. Keane, Madan & Madan, Boston, Mass., for plaintiffs.

Alice J. Klein, Charles F. Barrett, Martin C. Pentz, Nutter, McClennen & Fish, Boston, Mass., for defendant.

MEMORANDUM

FREEDMAN, District Judge.

On August 18, 1973 Janet Parker died and Robert Parker was seriously injured in a one-vehicle accident. Robert Parker died of his injuries in 1983. Plaintiffs, as administratrices of the estates of Janet and Robert Parker, bring this action to recover compensatory and punitive damages for personal injury, wrongful death and conscious pain and suffering against Ford Motor Company, the manufacturer of the vehicle involved in the 1973 accident.

Defendant has filed motions to dismiss or in the alternative for summary judgment. Defendant raises several grounds for relief:

(1) The Massachusetts wrongful death statute in effect at the time of the Parkers' accident, Mass.Gen.Laws ch. 229, § 2 as amended through St.1972 ch. 440, § 1, provided that no recovery could be had for a death which did not occur within two years after the injury which caused the death. As Robert Parker did not die until 1983, defendant argues the wrongful death claims filed by his estate must be dismissed;

(2) The doctrines of collateral estoppel and *res judicata* bar the claims of Robert Parker's estate for wrongful death and conscious pain and suffering;

(3) The claim of Janet Parker's estate for wrongful death and conscious pain and suffering is barred by the statute of limitation; and

(4) The claims of the estates of Robert Parker and Janet Parker for breach of warranty are barred because of the absence of privity of contract.

The Court referred these motions to the Magistrate who, on September 25, 1985, entered a Report and Recommendation recommending that defendant's motions be allowed in their entirety. Defendant filed a timely objection. The Court, having reviewed the matter *de novo* in light of plaintiffs' objection and defendant's response thereto, 28 U.S.C. § 636(b)(1)(B); Rule 3, Rules for United States Magistrates in the United States District Court for the District of Massachusetts, will adopt the recommendation in part and allow partial summary judgment in favor of the defendant.

I.

The relevant procedural and factual background, viewed in the light most favorable to the plaintiffs, as found by the Magistrate is as follows:

A. *Facts.*

. . . .

Robert Parker and Janet Parker, driver and passenger, respectively, were involved in a one-car accident on Route 32 in Royalston, Massachusetts on August 18, 1973. Robert Parker was driving a 1966 Ford Econoline van when it left the road and struck a tree. Robert Parker sustained severe and permanent brain injuries with a resulting seizure disorder. Janet Parker was killed in the accident. On October 8, 1974, Effie Parker was appointed the Administratrix of the Estate of Janet Parker. Robert Parker was allegedly wearing a seat belt but no seat belt was available on the passenger side of the vehicle. Robert Parker died as a result of the seizure disorder on March 5, 1983.

B. *Procedural Background.*

The present action constitutes the Parkers' third resort to a judicial forum seeking redress for injuries arising out of the August 18, 1973 accident.

1. *The Personal Injury Action.*

On November 1, 1974, by filing a complaint in Massachusetts Superior Court (Worcester, SS.), Robert Parker instituted a products liability action against Ford, seeking damages for personal injuries allegedly sustained by him in the August 18, 1973 accident, based on theories of negligence and breach of warranty. The sole plaintiff throughout the pendency of the action was Robert Parker.

Parker's case—both as to negligence and breach of warranty—proceeded on

the hypothesis that his injuries had been caused by the failure of his seat belt. Parker sought to establish that he had been wearing the belt on the evening of the accident, but that it had broken on impact, causing him to strike his head on the windshield or dashboard. To prove this, Parker called Bennett E. Gordon, Jr., whom Parker's counsel sought to qualify as an expert on the properties of plastics in general, and nylon in particular, so that Gordon might be permitted to offer his opinion regarding the cause of the severing of the seat belt. It became evident, however, that Gordon had no experience with woven nylon and the trial judge did not allow Gordon to testify on the subject. Ford moved for a directed verdict on all causes of action asserted in the personal injury complaint. Ford's motion was allowed and on May 16, 1977, judgment was entered in favor of Ford. A notice of appeal was not filed.

2. *The Legal Malpractice Action.*

On May 8, 1980 a complaint was filed alleging that Robert Parker's claim for personal injury, and Janet Parker's estate's claims for her personal injury and death against Ford were lost as a result of the defendant law firm's negligent prosecution of the personal injury action and its failure to bring an action on behalf of the estate of Janet Parker within the prescribed time. This action was called for trial on September 10, 1984. A settlement was reached under the terms of which the plaintiffs released their various claims in consideration of payment by the defendant law firm of $530,000. The case was closed on January 3, 1985. Report and Recommendation at 3–5.

## II.

■ Defendant's first ground for relief is that the estate of Robert Parker's claim for wrongful death is barred by a two-year limitation in the wrongful death statute in effect prior to 1982.

At the time of Robert Parker's injury, August 18, 1973, Massachusetts' wrongful death statute contained the following provision:

No recovery shall be had under this section for a death which does not occur within two years after the injury which caused the death.

Mass.Gen.Laws ch. 229, § 2 as amended through St.1972 ch. 440, § 1. This provision was deleted by St.1981 ch. 493, § 1, made applicable to "causes of action *arising on or after January 1, 1982.*" St. 1972 ch. 440, § 2 (emphasis added).

Because Robert Parker did not die until March 5, 1983, more than two years after his injuries were sustained, defendant contends, and the Magistrate agreed, that Robert Parker's claim was barred by the above-quoted sentence from the wrongful death statute in effect in 1973. Plaintiffs argue that the Court should look to the form of the statute in effect at the time of Robert Parker's death in 1983 which omits the two-year limitation period.

The essential inquiry is, therefore, whether to give effect to the amending statute or to apply the terms of the statute in effect in 1973. This depends, in turn, on whether Robert Parker's cause of action "arose" in 1973 when he sustained his injury, or in 1983 when he died.

Defendant cites *Beausoleil's Case,* 321 Mass. 344, 73 N.E.2d 461 (1947) in support of the former position. In that case, the dependent husband of a deceased worker received a workman's compensation award of $10.00 a week. The claimant contended that he should have been compensated at a much higher rate under the terms of a statute that became effective after the date of his wife's injury but before her death. In holding that the husband could not benefit from the amending statute, the Court applied the traditional rules of statutory construction and determined that because the amending statute affected substantive rights rather than remedial or procedural matters, it had to be given only prospective effect. The Court stated:

It is true that the right of a dependent to compensation does not arise until the death of the employee, but it is also true

that the right of a dependent to receive compensation originates in the injury because, unless it is shown that death resulted from an injury arising out and in the course of employment, there can be no award of compensation to dependents.... It is the compensable injury resulting in death that furnishes the basis for an award of compensation to dependents. It is such an injury rather than the death for which compensation is awarded. It has been held that there can be no recovery for the death of a person in accordance with a statute enacted after the injury but before the death. *Slate v. Fort Worth*, 193 S.W. 1143 (Tex. Civ.App.). *Quinn v. Chicago, Milwaukee & St. Paul Railway*, 141 Wis. 497 [124 N.W. 653].... A statute enacted after the injury cannot be applied to payments to dependents on account of the death of the employee resulting from the injury unless it is retroactively applied.... The rights of dependents are to be determined in effect at the time of injury and not by a subsequent statute which is effective at the time of the death of the employee.

*Beausoleil's Case*, 321 Mass. at 346–47, 73 N.E.2d 461.

*Quinn v. Chicago, Milwaukee & St. Paul Railway*, 141 Wis. 497, 124 N.W. 653 (1910), which was cited with approval in *Beausoleil's Case*, concerned a change in Wisconsin's wrongful death statute that occurred between the time of plaintiff's injury and his death. The Wisconsin court held that the right of action "does not come into existence till the death of the injured person occurs.... However, the right, inchoate in character as distinguished from the right of action, becomes fixed as soon as the injury occurs, but the right of action

waits upon death occurring." *Quinn*, 141 Wis. at 499, 124 N.W. 653. The holding of *Quinn* was reaffirmed in *Bradley v. Knutson*, 62 Wis.2d 432, 215 N.W.2d 369 (1974).

Plaintiffs contend that *Beausoleil's Case* should be distinguished because at the time of that decision, Massachusetts had not yet recognized that the right of action for wrongful death was of common law action and not simply "the creature of a statute...." *Beausoleil's Case*, 321 Mass. at 347, 73 N.E.2d 461. *See Gaudette v. Webb*, 362 Mass. 60, 284 N.E.2d 222 (1972), *overruling Carey v. Berkshire R.R.*, 1 Cush (55 Mass.) 475 (1848) and progeny. In *Gaudette*, the Supreme Judicial Court held that the right to recovery for wrongful death "is of common law origin." *Id.* 284 N.E.2d at 229.[1] Plaintiffs argue, "[i]nsofar as the court in *Beausoleil's Case* was constrained by statutory rights and remedies, its approach is inappropriate here.... [U]nlike insurers in a worker's compensation case, defendant can claim no reliance on the statutory provision in effect on the date of the injury." Plaintiffs' Opposition to Defendant's Motion to Dismiss at 17.

The brief answer to this argument is that the Court is very much constrained by the wrongful death statute which, as characterized by *Gaudette*, continues to regulate and limit the cause of action in several respects. *See* n. 1 *supra.*

Nevertheless, it does appear that *Beausoleil* can be distinguished from the instant case in a more significant way. In *Beausoleil's Case*, the amending statute, St.1945 ch. 572, did not expressly specify to which claims the new rates of recovery were applicable. By contrast, St. 1981 ch. 493 makes the deletion of the two-year limitation period applicable to "causes of action

---

**1.** Even though Massachusetts now recognizes the common law origin of the cause of action, the wrongful death statute must still, of course, be consulted:

[O]ur wrongful death statutes will no longer be regarded as "creating the right" to recovery for wrongful death. They will be viewed rather as: (a) requiring that damages for wrongful death be based upon the degree of the defendant's culpability; (b) prescribing the

range of the damages recoverable against each defendant; (c) requiring that an action for wrongful death be brought by a personal representative on behalf of the designated categories of beneficiaries; and (d) requiring that the action be commenced within the specified period of time, as a limitation upon the remedy and not upon the right.

*Id.* 284 N.E.2d at 229. *Gaudette* is discussed more extensively in Section IV *infra.*

arising on or after January 1, 1982." St. 1982 ch. 440, § 2. Without benefit of an express legislative intent as to which actions the amending statute should apply, the Supreme Judicial Court had no choice but to use the traditional rule of statutory construction and give St.1945 ch. 572 a prospective application.

While it is probably true that the substantive standards against which defendant's conduct must be measured is fixed as of the date of the injury, *see Bradley*, 62 Wis.2d at 439, 215 N.W.2d 369, the amending statute here clearly directs the Court to the time when plaintiff's cause of action "arises."

In several cases, Massachusetts courts have recognized that a cause of action "arises" on the date of death rather than the date of injury. *Martinelli v. Burke*, 298 Mass. 390, 391, 10 N.E.2d 113 (1937)(cases cited). ("It has been stated repeatedly that no cause of action arises until the actual occurrence of the death for which recovery is sought."). *See also, Hutchinson v. H.E. Shaw Co.*, 277 Mass. 115, 177 N.E. 813 (1931); *Bickford v. Furber*, 271 Mass. 94, 170 N.E. 796 (1930); *Wall v. Massachusetts Northeastern Street Railway*, 229 Mass. 506, 118 N.E. 864 (1918). Moreover, as plaintiffs correctly point out, "the language used by the Legislature in 1981 ('applicable to all causes of action arising on and after' the effective date) is *silent* as to the time when any injuries or accidents had to occur. In comparison certain prior amendments of the wrongful death statute have been made 'only to actions for death resulting from *injuries sustained* or *accidents occurring*' on or after the effective date (emphasis added). *E.g.*, St.1958 c. 238 sec. 10; St. 1962 c. 306 sec. 2." Plaintiffs' Opposition to Defendant's Motion at 13.

It is a familiar canon of statutory construction that where words used in a statute have been given a judicial construction, the legislature is considered to have used them according to that sense. *Commonwealth v. Greenwood*, 205 Mass. 124, 91 N.E. 141 (1910). Thus, when the legisla-

ture expressly provided the application of St.1981 ch. 493, § 1 to causes of action arising after January 1, 1982, the Court must interpret this to mean that where the plaintiffs' decedent died after January 1, 1982, St.1981 ch. 493, § 1 must be given effect. In such cases, plaintiffs' right of recovery is no longer barred by reason of the fact that Robert Parker's death occurred more than two years after his injury.

The Court must, therefore, disagree with the Magistrate's determination that the claims on behalf of the decedent Robert Parker should be dismissed on this ground.

### III.

Defendant argues that the claims of Robert Parker's estate for wrongful death and conscious pain and suffering should be dismissed nevertheless because they are precluded by the doctrines of *res judicata* and collateral estoppel.

 It is well settled that these doctrines are substantive in nature and thus, under the principle of *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court sitting in diversity must look to state law to determine what preclusive effect to accord to its judgments. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

Massachusetts applies the law of *res judicata*, or "claim preclusion," as it is often called, in a manner that is generally consistent with the approach taken by the Restatement (Second) of Judgments (1982) (hereinafter "Restatement"). *See Isaac v. Schwartz*, 706 F.2d 15, 16 (1st Cir.1983); *Boyd v. Jamaica Plain Co-op Bank*, 7 Mass.App. 153, 386 N.E.2d 775 (1979). The general rule of *res judicata*, as expressed in the Restatement is that "[a] valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim." Restatement § 19. The "bar" applies to subsequent claims that "grow[ ] out of the same transaction, act, or agreement, and seeks re-

dress of the same wrong." *MacKintosh v. Chambers,* 285 Mass. 594, 596, 190 N.E. 38 (1934). *See also* Restatement § 24(1) ("When a valid and final judgment in an action extinguishes the plaintiff's claim ... the claim extinguishes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions out of which the action arose.").

In contrast to *res judicata,* collateral estoppel or "issue preclusion" prevents the relitigation of issues that were actually litigated in a prior case. The Restatement offers the following general rule:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination in a subsequent action is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Restatement § 26. The preclusion applies not only to the parties to the original suit, but also to their privies and those for whom the original party acted as a "virtual representative." *Boyd,* 7 Mass.App. at 158, 386 N.E.2d at 779.

Both *res judicata* and collateral estoppel serve the salutory purpose of judicial finality. As aptly stated by Professor Moore, "the doctrine of *res judicata* prevents an encore." 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice,* ¶ 0.405[1] (1984). *See also, id.* at ¶ 0.441[2] (the purpose of collateral estoppel "is to preclude the repeated controversy of matters judicially determined; it is a 'reasonable measure calculated to save individuals and courts from the waste and burden of relitigating old issues.'" (footnote omitted)).

Despite these purposes, the Restatement and decisional law recognize some few exceptions to the policy of not relitigating issues or cases. *See* Restatement §§ 20, 26 & 28. Plaintiffs argue that neither *res judicata* nor collateral estoppel preclude this case, either because the claim does not

fall within the general rules or because some exception is applicable.

### A. Res Judicata

At common law, a right of action for tort did not survive the death of either the person injured or the wrongdoer. *Harrison v. Loyal Protective Life Insurance Co.,* 379 Mass. 212, 396 N.E.2d 987, 989 (1979). This rule was expressed in the maxim, *"actio personalis moritur cum persona."* [2] To alleviate the often harsh results of this rule, legislatures adopted statutes by which the tort claims of a deceased person were permitted to be litigated by a successor of the deceased in what are referred to as "survival actions." The claims that thus survive are for the recovery of losses sustained by the injured person himself during his lifetime. By contrast, in wrongful death claims, the family of the deceased has a distinct cause of action for the loss *to them* of the value of the deceased. *See* Mass.Gen.Laws ch. 228, § 1(2); Mass.Gen.Laws ch. 229, § 2; Restatement § 45, comment a.

■ Because Robert Parker brought an action to recover for his conscious pain and suffering during his lifetime which resulted in a directed verdict in favor of the defendant, Ford Motor Company contends that the principle of *res judicata* bars the plaintiffs' present attempt to relitigate this issue.

This position is supported by the Restatement and Massachusetts case law. According to the Restatement:

> When a person has been injured by an act that later causes his death and during his lifetime brought an action based on that act:
>
> (1) If the action proceeded to judgment for or against the injured person before he died, the successor under a survival of claims statute is precluded by that judgment to the same extent as the injured person would have been.

Restatement § 45. *See also, Rochford v. Atkins,* 213 Mass. 368, 100 N.E. 669 (1913).

---

**2.** "A personal right of action dies with the person."

Plaintiffs recognize the validity of this rule, but argue that "equitable considerations" militate against the application of *res judicata* to plaintiffs' claim. Plaintiffs' Opposition to Defendant's Motion at 33. In support of this argument, plaintiffs cite Restatement § 28(5)(c),[3] the section of the Restatement concerned with exceptions to the general rule of collateral estoppel. More apposite is Section 26(1) which provides in part:

(1) When any of the following circumstances exists, the general rule of § 24 [concerning splitting claims] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

. . . .

(f) It is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason, such as the apparent invalidity of a continuing restraint or condition having a vital relation to personal liberty or the failure of the prior litigation to yield a coherent disposition of the controversy.

Restatement § 26(1).

The circumstances pointed to by the plaintiff, the defendant's allegedly obstructive discovery practices in the prior lawsuit, simply do not rise to the level necessary to permit the *res judicata* bar to be evaded.

The Court, therefore, shall allow defendant's motion to dismiss plaintiffs' claim for Robert Parker's conscious pain and suffering. Having reached this decision, it is not necessary to consider whether this claim is barred by the applicable statute of limitation.

### B. Collateral Estoppel

■ Defendant argues that the judgment of the Massachusetts Superior Court in favor of the defendant in the prior litigation "necessarily determined all issues concerning Ford's liability for damages arising out of the injuries sustained by Robert Parker in the August 18, 1973 accident." Defendant's Memorandum in Support of Its Motion at 19–20. The claims in the present litigation should, according to the defendant, therefore, be barred under the doctrine of collateral estoppel.

Defendant argues that collateral estoppel should not be applied because the issues in the first trial were not "fully and fairly litigated" and there is no identity of the parties in the first suit and this litigation.

### (1) Lack of a Full and Fair Litigation

Plaintiffs contend that Robert Parker was denied a full and fair opportunity to litigate his claims in the first lawsuit because of the inadequacy of his counsel and the discovery misconduct. In support of this contention, plaintiffs rely on section 28(5)(c) of the Restatement which provides for an exception to the general rule of issue preclusion in circumstances where

[t]here is a clear and convincing need for a new determination of the issue ... (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

The Court shall examine whether Ford's alleged misconduct and the inadequacy of Robert Parker's counsel demonstrates a clear and convincing need for a new determination of Ford's liability.

### (a) Defendant's Alleged Discovery Misconduct in First Cause of Action

Comment j to section 28 of the Restatement includes, as illustrative of the exception provided for in section 28(5)(c), the situation in which one party concealed from the other information that would materially affect the outcome of the case. Plaintiffs contend that such was the case here. The Court disagrees.

---

**3.** *See infra,* for discussion of application of Section 28(5)(c) of the Restatement in the context of plaintiff's argument that defendant's fraudu-

lent discovery practices and the incompetence of plaintiff's counsel during the first proceeding render collateral estoppel inappropriate.

The alleged discovery misconduct consisted of the defendant's responses to plaintiff's interrogatories concerning tests or inspections "used or employed" on the seat belt system in question. Defendant responded that it had "no records presently in existence that would report the tests or inspections utilized in the design of the seat belt system." Plaintiff also queried whether the defendant was "ever aware of any danger of hazard or defect or defective condition in connection with the use, location, or design of the seat belt system prior to the time of the alleged occurrence." Defendant replied that it was not. Exhibit No. 5, Plaintiff's Opposition to Defendant's Motion (Plaintiff's Interrogatories No. 5, 14 and defendant's answers thereto).

Plaintiffs contend, however, that defendant produced, in response to plaintiffs' request for production of documents filed in this action, documents describing Crash Test Nos. 140 and 776. While it is true that one of the results in Test No. 140 was that "passenger protection in the front seat of the forward control vehicle proved very limited," there is no indication that this result was in any way related to a seat belt failure which was the substance of Robert Parker's first lawsuit and the essence of his interrogatories. The results of Test No. 776 were even less relevant as the test dummies in that case were not even wearing seat belts.

In sum, the Court concurs with the Magistrate that "Plaintiff's counsel in the prior proceeding seems to have asked the wrong questions; Ford's responses were not overgenerous." Report and Recommendation at 12, n. 3. Ford's responses to plaintiff's discovery requests did not, therefore, deprive plaintiff of a full and fair opportunity to litigate the issue of Ford's liability in the first action.

### (b) Inadequate Representation by Robert Parker's Counsel in First Cause of Action

Plaintiffs also allege that Robert Parker was denied a full and fair opportunity to litigate the issue of defendant's liability in the first cause of action because of the "woefully inadequate" representation he received by counsel in that case.

Even assuming this was the case, the Court believes that it would not be equitable to force the defendant to relitigate its case because Robert Parker's counsel was arguably neglectful in the first action. To do so would be to permit civil litigants to attack collaterally an earlier judgment with what can be described as the functional equivalent of a Sixth Amendment habeas corpus motion. Moreover, the circumstances of this case, specifically the fact that Robert Parker recovered a substantial settlement against his attorney in a legal malpractice action, drains much force from plaintiffs' argument that it would be unjust to apply the bar of collateral estoppel in light of the inadequacy of Robert Parker's counsel's performance.

The Court concludes, therefore, that Robert Parker was not denied a full and fair opportunity to litigate the issues of defendant's negligence in the earlier action.

### (2) Identity of the Parties in the Earlier Action and the Instant Proceeding

Central to the application of collateral estoppel is the principle that only parties or their privies can be bound by determinations of issues in the earlier case. *Boyd,* 7 Mass.App. at 158, 386 N.E.2d at 779. As a corollary to this rule, it is clear that strangers to the original action are not bound. 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure,* § 4449 (1981).

Applying these relatively straightforward principles to situations where a person was injured by an act which later caused his death and during his lifetime unsuccessfully brought an action based on that act, and after his death his beneficiaries attempt to relitigate liability questions in a wrongful death action, is anything but simple. Essential to this inquiry is the characterization of the family's claim under the wrongful death statute as either "derivative" or "independent" of the injured person's own personal injury claim.

If the family's claim is characterized as "derivative," according to the Restatement, "the beneficiaries of the death action can sue only if the decedent would still be in a position to sue. Accordingly ... issue preclusion applicable against the decedent is applicable also against the claimant in the wrongful death action." Restatement § 46, comment c. By contrast, if the wrongful death claim is considered "wholly 'independent,'" the Restatement's comment suggests "the decedent's disposition of his personal injury claim would have no effect on the wrongful death claim. The situation would be as though the injured person and his beneficiary each had a separate legal interest in his life, assertable by separate action." Id.

At one time it was undisputed that Massachusetts' wrongful death action was of the "independent" variety. *McCarthy v. Wood Lumber Co.*, 219 Mass. 566, 567, 107 N.E. 439 (1914); *Clare v. New York & New England Railway Co.*, 172 Mass. 211, 51 N.E. 1083 (1898). The designation flowed from the characterization of the wrongful death action as punitive rather than as compensatory. Id. In defendant's view, however, various amendments to the wrongful death statute beginning in 1958 evidence the legislature's intention to overrule this earlier view and to establish that a claim for wrongful death in Massachusetts is derivative from and not independent of the decedent's personal injury claim.[4]

While the Court finds defendant's view persuasive, it is reluctant to endorse a wholesale reinterpretation of Massachusetts' wrongful death statute from independent to derivative absent clearer guidance from the Supreme Judicial Court;[5] nor is such a reinterpretation required to resolve the thorny collateral estoppel issues in this case.

This is so because, even assuming that a claim for wrongful death in Massachusetts is not derivative, it does not necessarily follow that it is wholly independent. In the small number of jurisdictions that consider their wrongful death statutes to authorize an independent cause of action, the Restatement suggests that the subsequent action be limited to permit a "second look" only at the question of damages when death has intervened after the first action for personal injuries went to judgment. Restatement § 46, comment c. The comment strongly disapproves of permitting relitigation of the question of liability even in jurisdictions that characterize their wrongful death actions as independent. Not only may inconsistent results be expected if this were not the practice, but "[i]t allows what seems worse than double recovery, an opportunity by one member of a family to recover a loss that was legally refused when sought by another." Id. What underlies the Restatement's view is its recognition of "the substantial coextensiveness of the social and economic interests in the two actions and the fact that the decedent had every opportunity to litigate effectively." Id.

The concept of substantial coextensiveness was recently mentioned with approval by the Supreme Judicial Court in *Fidler v. E.M. Parker*, 394 Mass. 534, 476 N.E.2d 595 (Mass.1985). In *Fidler*, the court ruled that a husband bringing a claim for loss of consortium was collaterally estopped from relitigating the same statute of limitation issue which had been resolved against his

---

**4.** Specifically, the defendant points to St.1958 ch. 238, § 1, which amended the wrongful death statute to insert a limitation of recovery to "such circumstances that the deceased could have recovered damages for personal injury if his death had not resulted," as evidence that the legislature intended to transform an independent wrongful death statute into a derivative one. Defendant suggests that this conclusion is also supported by the comparative negligence statute, Mass.Gen.Laws ch. 231, § 85, which permits the assertion of comparative negligence as a defense to a wrongful death action commenced by the representative of the decedent's beneficiaries.

**5.** Further complicating the question of whether wrongful death claims in Massachusetts should be considered independent or derivative is the fact that since 1972 the Supreme Judicial Court has held that the right to recover for wrongful death is of common law origin, though subject to the limitations of the wrongful death statute. *Gaudette*, 362 Mass. at 71, 284 N.E.2d at 229.

wife in her earlier federal court action. The Court noted that, although it was not clear when collateral estoppel should apply to a nonparty in the original action, "the policy of repose is especially significant when the spouse of a nonprevailing litigant seeks to litigate a claim related to the spouse's alleged injuries." *Id.* 476 N.E.2d at 603. The court detected a trend in the law "against allowing suits for loss of consortium where the injured spouse would be collaterally estopped from litigating the same or similar issues." *Id.* Even though the husband's claim for loss of consortium was technically independent of his wife's claims for personal injuries, *see Feltch v. General Rental Co.*, 383 Mass. 603, 608, 421 N.E.2d 67, 70–71 (1981), it was

> based upon the identical facts that lead the Federal Court to rule against his wife. Neither does it detract from the principle of independence to recognize the pervasive interrelationship between his claim for loss of consortium and the claims of his wife decided in the federal court. In such circumstances we look to see what circumstances exist to warrant relitigation of the issues. We conclude it would be contrary to the policies of judicial economy and of affording litigants repose, to allow Donald Fidler to circumvent the preclusive effect of the Federal Court judgment only because his claim was technically independent of hers.

*Fidler*, 493 Mass. at 548, 476 N.E.2d at 604–05.

Although plaintiffs are undoubtedly correct that the Supreme Judicial Court in *Fidler* was looking to the *federal* rule of collateral estoppel, *id.* 476 N.E.2d at 599; nevertheless, when one examines the Court's opinion and the sharp partial dissent of Justice O'Connor, and the extensive

citations to Massachusetts authorities throughout both, there can be little doubt that the Supreme Judicial Court would adopt what it thought to be the federal rule of collateral estoppel as the Massachusetts practice as well.

The Court concludes, therefore, that because of the extensive interrelationship between the personal injury claims of Robert Parker and the claims of his wrongful death beneficiaries, the latter are precluded from relitigating the defendant's liability in this action.

### IV.

■ Turning to the question of the statute of limitation, Janet Parker's administratrix has brought suit under the wrongful death statute, Mass.Gen. Laws ch. 229, § 2, "for the use and benefit" of Janet Parker's minor children more than eleven years after Janet Parker's death. The defendant has moved to dismiss this portion of the suit on the ground that it is time-barred by the applicable Massachusetts statute of limitation. Mass.Gen. Laws ch. 229, § 2, as amended through St.1967 ch. 666, § 1.[6] Relying on *Gaudette v. Webb, supra,* plaintiffs contend that the statute of limitations was tolled because of the minority of Janet Parker's children. *See* Mass.Gen. Laws ch. 260, § 7.[7]

In *Gaudette*, the plaintiff intestate died in an automobile accident on April 15, 1967. The decedent's widow was appointed administratrix of his estate on March 4, 1970. Two days later, the administratrix commenced a survival action for conscious pain and suffering and a wrongful death claim on behalf of herself and her minor children. The defendant successfully pleaded the

---

**6.** The final sentence of Mass.Gen. Laws ch. 229, § 2 states, "An action to recover damages under this section shall be commenced within one year from the date of death or within such time thereafter as is provided by sections four, four B, nine or ten of chapter two hundred and sixty." Section 4 of Mass.Gen.Laws ch. 229 § 4, which is applicable to this case, *Bickford v. Furber,* 271 Mass. at 96, 170 N.E. at 796, requires the commencement of tort actions for

personal injuries be commenced within two years after the cause of action accrues.

**7.** The Massachusetts' tolling statute for minors, Mass.Gen. Laws ch. 260, § 7, provides, "If the person entitled thereto is a minor, or is insane or imprisoned when a right to bring an action first accrues, the action may be commenced within the time hereinbefore limited after the disability is removed."

two-year statute of limitation in superior court. The Supreme Judicial Court reversed the dismissal of the children's wrongful death claim on the ground that the statute of limitations for their wrongful death claim was tolled by Mass.Gen.Laws ch. 260, § 7.

According to the defendant, *Gaudette* decided *"only* that the wrongful death limitation will be tolled for the benefit of minors where the action for wrongful death otherwise would have been barred *before* a personal representative was appointed." Defendant's Memorandum in Support of its Motion at 53 (emphasis in original). Where, as here, a personal representative of the estate was appointed within the two years after the death of the plaintiff's decedent, defendant argues that *Gaudette* does not require the tolling provision to be applied despite the minority of the decedent's children. In support of this view, defendant notes that the wrongful death statute does not vest any severable, personal right of action in a minor for the death of a parent as the action must be prosecuted by the personal representative of the decedent's estate. Defendant distinguishes this situation from those in which a right of action is vested in a person suffering from a legal disability and where the mere appointment of a guardian or the availability of a next friend does not affect the running of a period of limitation. *See Hervey v. Rawson,* 164 Mass. 501, 504, 41 N.E. 682, 683 (1895). In short, defendant claims that if the Court declines to accept its interpretation of *Gaudette,* the legislature's clear intent to vest the right to enforce a wrongful death action in the personal representative of the estate of a decedent will be "render[ed] nugatory." Defendant's Brief in Support of Its Motion at 60.

Whatever merit there may be to these arguments, the holding in *Gaudette* seems to reject this approach. Contrary to defendant's distinction between a minor's wrongful death action and an action vested in a disabled person and prosecuted by a guardian, the *Gaudette* Court pointedly stated:

> Recovery under the wrongful death statute by their mother is in part intended "to the use of" the children of the deceased. G.L. c. 229, § 1(3). *As administratrix, she acts merely as a representative or conduit for the children's recovery, much like a next friend for a minor plaintiff.* In a very real sense, therefore, it is the children's cause of action. Accordingly, G.L. c. 260, § 7, would operate to toll the running of the statute as to their right to recovery through a representative just as it would toll its running if their right of action were direct.

*Id.* 284 N.E.2d at 230 (emphasis added).

The fact that there was available a personal representative who could have brought the wrongful death action within the two-year period does not detract from the essential holding of *Gaudette* —that Mass.Gen.Laws ch. 260, § 7 tolls the running of the statute of limitation for wrongful death actions just as in any other common law action. While the distinction advocated by the defendant—giving effect to the tolling statute only until a personal representative is appointed—is sensible, it is not authorized by *Gaudette* or Mass. Gen. Laws ch. 260, § 7.

In light of the above-quoted language from *Gaudette,* the Court must conclude that the period of limitation of ch. 229, § 2 has been effectively tolled because of the minority of the decedent's children.[8] Accordingly, the Court declines to follow the recommendation of the Magistrate to allow the dismissal of the wrongful death claim of Janet Parker's estate for the benefit of the decedent's minor children and will deny the instant motion.

---

8. In its answer defendant has asserted the equitable defense of laches, claiming it was prejudiced because of Janet Parker's administratrix' delay in bringing the wrongful death action. As has been requested, defendant will have the opportunity to advance this ground prior to trial, if it so desires. *See* Defendant's Brief in Support of Its Motion at 59, n. 57.

The Court does, however, accept the Magistrate's conclusion that "although any such claim would have passed to her estate upon Janet Parker's death thus triggering the tolling provision set forth in Mass.Gen. Laws ch. 260, § 10, the administratrix failed to bring the claim within the time period prescribed therein and is barred from asserting that claim as well." Report and Recommendation at 16. Accordingly, the Court will allow defendant's motion to dismiss the claim for Janet Parker's conscious pain and suffering as barred by the statute of limitations.

### V.

■ Finally, the Court rejects plaintiffs' objection to the Magistrate's conclusion that the breach of warranty claims of the estates of Robert and Janet Parker should be dismissed because of the absence of privity between the defendant and the decedents. As the Magistrate correctly noted, neither the 1971 nor the 1973 amendments to Mass.Gen. Laws ch. 106, § 2–318, which eliminated the requirement of privity, applies to the instant case.

The 1971 amendment, St.1971 ch. 670, § 1, applied to sales made on or after November 16, 1971. St.1971, ch. 670, § 2. The sale of the van involved in the accident, a 1966 Econoline, was clearly made before 1971. The Parkers did not own the van at the time of the accident. The van's owner, Gordon Parker, purchased the vehicle used from Robert Ford Sales, Inc., prior to December 1, 1970. At the time of this sale, the van had approximately 55,000 on the odometer.

Similarly, the 1973 amendment, St.1973, ch. 750, § 1, eliminated the privity requirement in cases in which the injury occurred on or after the effective date of the amendment, December 16, 1973. Mrs. Parker died on August 18, 1973 and, although Mr. Parker did not die until 1983, he also suffered his injuries on August 18, 1973, prior to the effective date of the amendment.

Accordingly, the Court adopts this recommendation of the Magistrate and will dismiss both estates' claims for breach of warranty.

### VI.

In summary, with respect to the claims of Robert Parker's estate, the Court has determined that the wrongful death claim is not barred by the two-year period of limitation of Mass.Gen. Laws ch. 229, § 2 as amended through St.1972, ch. 440, § 1. Nevertheless, Robert Parker's unsuccessful personal injury action against the defendant is *res judicata*, barring relitigation of a claim for his conscious pain and suffering. In addition, the estate of Robert Parker is also collaterally estopped from relitigating the issue of defendant's liability in a wrongful death action. Finally, Robert Parker's estate cannot bring a claim for breach of warranty because of the absence of privity between Robert Parker and the defendant. Accordingly, with the exception of the Court's determination with respect to the two-year period of limitation of ch. 229, § 2, the Court will adopt the recommendation of the Magistrate and allow defendant's motion for summary judgment with respect to all of the claims of Robert Parker's estate.

With respect to the claims of Janet Parker's estate, the Court has determined that the statute of limitations for bringing a wrongful death action on behalf of Janet Parker's minor children was tolled because of their minority. The Court, therefore, declines to adopt the recommendation of the Magistrate with respect to this claim. Accordingly, the Court will deny defendant's motion to dismiss this portion of plaintiffs' complaint. However, the Court adopts the recommendation of the Magistrate with respect to the balance of the claims of the estate of Janet Parker and will allow defendant's motion for summary judgment with respect to those portions of the complaint.

An appropriate Order shall issue.