NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12714

GGNSC ADMINISTRATIVE SERVICES, LLC, & others[1]  vs.  JACKALYN M. SCHRADER, personal representative.[2]


Suffolk.     October 4, 2019. - February 27, 2020.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, & Kafker, JJ.


Nursing Home.  Wrongful Death.  Negligence, Nursing home, Wrongful death.  Arbitration, Appeal of order compelling arbitration, Scope of arbitration.  Consent.  Uniform Arbitration Act.


Certification of a question of law to the Supreme Judicial Court by the United States Court of Appeals for the First Circuit.


John Vail, of the District of Columbia (David J. Hoey also present) for the defendant.
Joseph M. Desmond (Alex Harrington also present) for the plaintiffs.
The following submitted briefs for amici curiae:
Jennifer A. Creedon for Massachusetts Defense Lawyers Association.

_____

[1] Golden Gate National Senior Care, LLC; GGNSC Holdings, LLC; GGNSC Chestnut Hill, LLC, doing business as Golden Living Center -- Heathwood.

[2] Of the estate of Emma J. Schrader.

Meryl D. Grenadier, William Avarado Rivera, & Kelly Bagby, of the District of Columbia, Eric M. Carlson of California, Steven Schwartz, & Rebecca J. Benson for AARP & others.
John J. Barter for Professional Liability Foundation, Ltd.
Robert E. Curtis, Jr., for Massachusetts Advocates for Nursing Home Reform, Inc.

LOWY, J.  After the decedent died in the care of a nursing home, her daughter commenced a wrongful death action against the nursing home notwithstanding the existence of an arbitration agreement between the decedent and the nursing home.  The United States Court of Appeals for the First Circuit (First Circuit) certified two questions to this court.[3]  The first question, whether our wrongful death statute, G. L. c. 229, § 2, provides rights to statutory beneficiaries derivative of or independent from what would have been the decedent's own cause of action for the injuries causing her death (decedent's action), informs the underlying dispute about whether the decedent's arbitration agreement binds the decedent's statutory beneficiaries of the wrongful death action.  The language of G. L. c. 229, § 2, and our interpretation of the statute through its various iterations convince us that the Legislature intended wrongful death actions to be derivative of the decedent's action.  To the extent that the statute's derivative character does not answer the second

---

[3] The United States Court of Appeals for the First Circuit certified the questions to us pursuant to S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981).

certified question, whether the arbitration agreement is otherwise enforceable, we conclude that, in the circumstances of this case, the arbitration agreement does, indeed, control the beneficiaries.[4]

1.  Factual and procedural background.  We recite the undisputed facts as established by the United States District Court judge in his decision granting the plaintiffs' motion to compel arbitration under the Federal Arbitration Act.

Jackalyn Schrader brought the decedent, her mother, Emma Schrader, to the Golden Living Center Heathwood (Heathwood) in February 2013.[5]  Heathwood is part of a larger corporate structure known as GGNSC.  When Jackalyn brought the decedent to Heathwood, an administrator handed Jackalyn a stack of paperwork.  Heathwood did not condition admission of the decedent or caring for her upon the completion of all of the documents, some of which, including an arbitration agreement, were voluntary and clearly labeled as such.

---

[4] We acknowledge the amicus briefs submitted by AARP, AARP Foundation, National Consumer Voice for Quality Long-Term Care, Justice in Aging, Center for Public Representation, and National Academy of Elder Law Attorneys; Professional Liability Foundation, Ltd.; Massachusetts Defense Lawyers Association; and Massachusetts Advocates for Nursing Home Reform.

[5] Because the decedent and the defendant share a last name, we refer to Jackalyn by her first name.

The arbitration agreement pertained to Heathwood and the "Resident." The agreement defined "Resident" as including "all persons whose claim is or may be derived through or on behalf of the Resident [the decedent], including any next of kin, guardian, executor, administrator, legal representative, or heir of the Resident, and any person who has executed this Agreement on the Resident's behalf." Jackalyn is both the decedent's next of kin and her personal representative as executor of her estate. Following the decedent's admission to Heathwood, Jackalyn signed the arbitration agreement. Jackalyn acted only as power of attorney for the decedent and did not sign any documents in her individual capacity.[6]

On December 3, 2013, the decedent died in Heathwood's care. On February 4, 2016, Jackalyn brought a wrongful death action pursuant to G. L. c. 229, § 2, in the Superior Court in her capacity as the decedent's personal representative, alleging that GGNSC negligently caused the decedent's death. The complaint further alleged that the decedent's injuries were ones "for which [the decedent] would have been entitled to bring an

---

[6] As a matter of law, the decedent signed the agreement. See Johnson v. Kindred Healthcare, Inc., 466 Mass. 779, 785 (2014), citing G. L. c. 190B, § 5-502.

action had she survived, and the right to bring such action survives her."[7]

On March 15, 2016, GGNSC sued Jackalyn in the United States District Court for the District of Massachusetts to compel arbitration. Jackalyn opposed arbitration on two grounds. First, she contended that the arbitration agreement was both procedurally and substantively unconscionable. The Federal District Court judge held that the arbitration agreement was valid and not unconscionable.[8]

In the alternative, Jackalyn argued that the arbitration agreement could not bind the decedent's beneficiaries because they were not its signatories. In other words, Jackalyn claimed that the arbitration agreement could not control the wrongful death claim because the beneficiaries' claim under the wrongful death statute was independent of the decedent's action and the

---

[7] Specifically, Jackalyn claims that "preventable sacral decubitus" (bedsores or pressure ulcers) resulted in the decedent's pain and suffering, eventually requiring surgery, from which the decedent never recovered.

[8] Jackalyn also brought a negligence claim in the Superior Court. The Federal District Court judge considered only the wrongful death action, and on appeal to the First Circuit, the parties and court treated the wrongful death action and the negligence claim as equivalent. In her brief to us, Jackalyn claims that she also brought a survival action in the Superior Court. Her complaint, however, does not point to our survival statute, G. L. c. 228, § 1. Although we assume that her appellate brief meant to refer to a negligence claim, we only address the wrongful death claim because that is the question that the First Circuit certified to us.

decedent was the only legal party to sign the arbitration agreement.  The Federal District Court judge concluded that the cause of action was derivative, and thus the arbitration agreement bound the estate on behalf of the wrongful death beneficiaries.[9]  The judge then granted the motion to compel arbitration, but declined to stay Jackalyn's Superior Court action pending the outcome of the arbitration.  Instead, the parties agreed to do so.  Jackalyn then asked the judge to certify questions to this court, but he declined to do so at the "thirteenth hour."  Jackalyn appealed from this decision to the First Circuit.

The First Circuit certified two questions to us:

"1.  Is the wrongful death claim of [the decedent's] statutory heirs derivative or independent of [the decedent's] own cause of action?

"2.  If the answer to the first question does not resolve the issue presented to the federal court, is Jackalyn['s] wrongful death claim nonetheless subject to [the decedent's] Agreement that her 'next of kin, guardian, executor, administrator, legal representative, or heir' would arbitrate claims against GGNSC?"

Although we have addressed the first question in cases involving past iterations of our wrongful death statute, our law today is clearly unsettled on the matter and, although the

---

[9] In his decision, the judge explicitly disagreed with the reasoning in another opinion that was decided in the Federal District Court in Massachusetts.  See Oahn Nguyen Chung vs. StudentCity.com, Inc., U.S. Dist. Ct., No. 10-10943 (D. Mass. Sept. 9, 2011).

parties raised the issue in Johnson v. Kindred Healthcare, Inc., 466 Mass. 779 (2014), we did not address it because we decided the case on different grounds. See id. at 788 n.14 (health care agent's decision to arbitrate disputes does not bind patient under health care proxy statute). Based on a plain reading of the wrongful death statute and our interpretation of common-law wrongful death actions over time, and in light of persuasive authority from other States, we determine that a wrongful death claim of a statutory beneficiary is derivative of the decedent's action and that the arbitration clause in question is enforceable.

2. Discussion. a. Characterization of wrongful death claims as derivative or independent. i. Under wrongful death statute. The issue in this case cannot be understood without an explanation of the two approaches to an action for wrongful death, derivative and independent.

If we characterize claims of beneficiaries under a wrongful death statute as "derivative," then the "wrongful death liability is but an extension of the decedent's personal injury claim." Willis & Peverall, The "Vanishing Trial": Arbitrating Wrongful Death, 53 U. Rich. L. Rev. 1339, 1352 (2019) (Willis & Peverall). This means that "the beneficiaries of the death action can sue only if the decedent would still be in a position to sue." Ellis v. Ford Motor Co., 628 F. Supp. 849, 858 (D.

Mass. 1986), quoting Restatement (Second) of Judgments § 46 comment c (1982) (Restatement). Courts that follow this interpretation emphasize "that the same tortious 'conduct' which caused the decedent's personal injury also undergirds the wrongful death action." Willis & Peverall, supra at 1353. Under this view, because the wrongful death action is derivative of the decedent's rights, the decedent "enjoys [exclusive] rights over the wrongful death action such that he or she can agree to arbitrate that claim entirely." Id.

On the other hand, if claims under a wrongful death statute are "independent," then "the decedent's disposition of his personal injury claim would have no effect on the wrongful death claim. The situation would be as though the injured person and his beneficiary each had a separate legal interest in his life, assertable by separate action." Ellis, 628 F. Supp. at 858, quoting Restatement, supra. Courts following this interpretation have held that "wrongful death liability does not concern recovery for personal injury at all or . . . any other claim that the decedent may have had against the tortfeasor." Willis & Peverall, supra at 1354. The action "deals only with the economic effect the decedent's death had upon specific family members." Id. Thus, the decedent would be without authority to bind beneficiaries like Jackalyn to arbitration for her wrongful death claims. See id.

Unlike with statutes giving rise to derivative claims, then, statutes giving rise to independent claims could have an inefficient application; if a nursing home resident signed an arbitration agreement and her nursing home injured her, she could bring only her negligence claim through arbitration. If she later died from those injuries, a statute giving rise to independent wrongful death claims would permit her executor to commence a wrongful death action in court based on the same conduct even if she had resolved her negligence claims against the nursing home through arbitration. See Ellis, 628 F. Supp. at 857-858.

ii. _Common-law basis for wrongful death claims_. Jackalyn argues that our wrongful death statute, G. L. c. 229, § 2, does not negate an independent common-law right to bring a wrongful death claim. Like most jurisdictions, we previously held that "there [was] no common law right to civil recovery for death, and that any right to such recovery [was] solely a creation of the statutes." Gaudette v. Webb, 362 Mass. 60, 64 (1972).[10] In Gaudette, however, we followed the United States Supreme Court in concluding that our law had evolved; thus, "the right to recovery for wrongful death is [now] of common law origin," and

_____

[10] For a thorough history of the development of our common-law wrongful death jurisprudence, see Matsuyama v. Birnbaum, 452 Mass. 1, 21-23 (2008), and Gaudette, 362 Mass. at 64-70.

no longer solely created by statute.  Id. at 71, discussing Moragne v. States Marine Lines, Inc., 398 U.S. 375, 409 (1970). The defendant points to Gaudette as support for the proposition that our wrongful death jurisprudence, with its common-law foundation, is open to judicial control.

The defendant misunderstands our interpretation of G. L. c. 229, § 2.  See Bratcher v. Galusha, 417 Mass. 28, 30-31 (1994) (declining plaintiff's request to "rewrite or ignore the plain language"); Hallett v. Wrentham, 398 Mass. 550, 555 (1986) ("Gaudette does not stand for the proposition that the requirements of the statute may be disregarded").  Far from providing this court unbridled power to interpret G. L. c. 229, § 2, the Gaudette decision instead requires that we follow the procedures prescribed in that statute, see Marco v. Green, 415 Mass. 732, 735 (1993), so long as we anchor that statutory interpretation to the common law so as to "meet changes in the evolving life of the Commonwealth" as we do with "all common-law causes of action," Matsuyama v. Birnbaum, 452 Mass. 1, 23 (2008).  See id. at 4 (recognizing that loss of chance of survival due to medical negligence "comports with the common law of wrongful death as it has developed in the Commonwealth" and with G. L. c. 229, § 2).[11]  In deciding whether wrongful death

---

[11] Any of our interpretations of the common law must therefore recognize that G. L. c. 229 sets forth (a) that

rights are derivative or independent, we look first to the statute and then, if the language does not resolve the question, to the common law for guidance. See Pobieglo v. Monsanto Co., 402 Mass. 112, 116 (1988).

b. Wrongful death claims under G. L. c. 229, § 2, as derivative. i. Statutory history. In 1840, Massachusetts was the first State to enact a wrongful death statute. See Willis & Peverall, supra at 1359. The Legislature set the foundation of the statute's modern iteration in 1946, by establishing liability for towns and common carriers whose negligence resulted in death. St. 1946, c. 614, § 1. The Legislature amended the statute in 1947, broadening the liability for "wilful, wanton, or reckless" behavior. St. 1947, c. 506, § 1A.

In 1958, the Legislature enacted the language more or less as it stands today.[12] St. 1958, c. 238, § 1. Section 2 of G. L. c. 229 states, in pertinent part:

> "A person who (1) by his negligence causes the death
> of a person in the exercise of due care, or (2) by
> willful, wanton or reckless act causes the death of a
> person under such circumstances that the deceased

damages are assessed based on the degree of the defendant's culpability; (b) the range of recoverable damages; (c) that only a "personal representative on behalf of the designated categories of beneficiaries" can bring the action; and (d) a statute of limitations. Gaudette, 362 Mass. at 71.

[12] After 1958, amendments to the statute were relatively minimal, for example, increasing the statute of limitations, St. 1989, c. 215, § 1, and increasing the amount recoverable by the claimant, St. 1972, c. 440, § 1.

could have recovered damages for personal injuries if his death had not resulted . . . shall be liable in damages in the amount of: (1) the fair monetary value of the decedent to the persons entitled to receive the damages recovered, as provided in [G. L. c. 229, § 1] . . . . Damages under this section shall be recovered in an action of tort by the executor or administrator of the deceased."[13]

ii. Plain language. "When conducting statutory interpretation, this court strives to effectuate the Legislature's intent by looking first to the statute's plain language" (quotations and citation omitted). Plymouth Retirement Bd. v. Contributory Retirement Appeal Bd., 483 Mass. 600, 604 (2019). We consider the plain language of the section at issue by analyzing the statute as a whole. See id. at 605.

In 1958, the Legislature amended G. L. c. 229, § 2, to permit compensation only "under such circumstances that the deceased could have recovered damages for personal injuries if his death had not resulted." St. 1958, c. 238, § 1. Through this amendment, the Legislature expressly tethered a wrongful death claim to tortious conduct that caused the decedent's personal injury. In other words, where no cause of action for wrongful death exists unless the decedent could have sued for personal injury, then the wrongful

---

[13] General Laws c. 229, § 1, creates a roadmap of who constitutes a beneficiary of the decedent.

death claim necessarily derives from the underlying tort.
As we have noted in other contexts, "claims for recovery
based on personal injury, wrongful death, or loss of
consortium are not distinct when they derive from the same
constellation of facts." Sisson v. Lhowe, 460 Mass. 705,
710 (2011).

The "under such circumstances" clause certainly
modifies wrongful death actions brought based upon
"willful, wanton, or reckless act[s]." G. L. c. 229, § 2.
By virtue of the conjunction "or" placed between the
different types of acts causing wrongful death, the clause
also seems to modify the cause of action based on
negligence. Id. In any event, we conclude that the clause
applies to both wrongful death actions caused by willful,
wanton, or reckless acts, as well as by negligence.
Moreover, the elements of our wrongful death action based
on negligence mirror those of an ordinary negligence claim.
See Correa v. Schoeck, 479 Mass. 686, 693 (2018) ("To
prevail in her wrongful death suit [under G. L. c. 229,
§ 2, plaintiff] must prove that the defendants were
negligent"). Thus, the decedent's "executor or
administrator" can bring a negligence claim pursuant to
G. L. c. 229, § 2 only "under such circumstances" in which

the decedent could have raised an ordinary negligence claim.

The language and structure of our wrongful death statute also reflects the derivative nature of claims brought under it. Under G. L. c. 229, § 2, only the "executor or administrator of the deceased" can initiate the wrongful death action, and the statute separates the permissible claimant from the permissible beneficiaries in § 1. The Legislature thereby intended wrongful death rights to remain tied to the decedent's action; if the rights belonged to the statutory beneficiaries, then the Legislature presumably would have listed them in § 2 with the other claimants permitted to commence lawsuits. Indeed, both G. L. c. 229, §§ 1 and 2, "provide[] for a single action[, on behalf of the class of beneficiaries defined in G. L. c. 229, § 1,] brought by the decedent's executor or administrator. The executor or administrator presents all claims by the designated beneficiaries for damages flowing from the wrongful death." Hallett, 398 Mass. at 555. Id. at 556 (loss of consortium and wrongful death claims not independent).

iii. Evolving judicial interpretation. We also find support for concluding that wrongful death claims brought under G. L. c. 229, § 2, are derivative in our

interpretation of the various legislative amendments.  See Commonwealth v. Wassilie, 482 Mass. 562, 576 (2019), quoting Commonwealth v. Quinn, 439 Mass. 492, 499-500 (2003) ("unspecific statutory language 'may nonetheless be sufficiently definite because of judicial construction, common law meaning, or the statutory history of particular terms'").  Prior to the Legislature's amendments in 1958, we interpreted our wrongful death statutes to create independent rights for beneficiaries.  See Ellis, 628 F. Supp. at 858, citing McCarthy v. William H. Wood Lumber Co., 219 Mass. 566, 567 (1914) ("At one time it was undisputed that Massachusetts' wrongful death action was of the 'independent' variety").  See also Oliveria v. Oliveria, 305 Mass. 297, 301 (1940), overruled on another ground by Sorensen v. Sorensen, 369 Mass. 350 (1975) ("The statute does not limit the remedy, as do the statutes of many jurisdictions, to instances where the deceased could have maintained an action if he had lived.  The action for death is not derivative in character"); Wall v. Massachusetts Northeastern St. Ry., 229 Mass. 506, 507 (1918) (wrongful death actions did not accrue during decedent's lifetime and Massachusetts differed from derivative state statutes providing "a right of action for the death of the injured person only if he might have

maintained an action had he lived" [quotations and citation omitted]); <u>Montellier</u> v. <u>United States</u>, 202 F. Supp. 384, 394 (E.D.N.Y. 1962), aff'd, 315 F.2d 180 (2d Cir. 1963) ("[because Massachusetts's wrongful death statute] created a right in the survivors which did not arise until the wrongful death, the deceased had no power to barter it away and his execution and delivery of a release was nugatory as to his survivors").[14]

Since the amendments to G. L. c. 229, § 2, in 1958, this court has not held claims under the statute to be independent. See <u>Johnson</u>, 466 Mass. at 788 n.14. Although we have not directly reached the issue, see <u>id</u>., the direction of our case law in other contexts appears clear. See <u>Sisson</u>, 460 Mass. at 710 (wrongful death not distinct from other claims when facts same); <u>Tobin</u> v. <u>Norwood Country Club, Inc</u>., 422 Mass. 126, 138 (1996) (contributory negligence of decedent reduces damages on all claims, not just those awarded to estate); <u>Santos</u> v. <u>Lumbermens Mut. Cas. Co</u>., 408 Mass. 70, 77-78 (1990) (beneficiaries receive award, but must operate through "conduit" of executor or

---

[14] See also <u>Beausoleil's Case</u>, 321 Mass. 344, 347 (1947) (decedent cannot "prevent his statutory beneficiaries from exercising [right to bring wrongful death claim] when it comes into existence at his death"); <u>Eldridge</u> v. <u>Barton</u>, 232 Mass. 183, 186 (1919) ("damages recovered [for decedent's death] would not be assets of the estate in the hands of the administrator").

administrator); Norman v. Massachusetts Bay Transp. Auth.,
403 Mass. 303, 308 (1988) ("In a wrongful death action,
damages are not recoverable both for the injured person's
losses and the derivative losses of others"); Hallett, 398
Mass. at 556 (loss of consortium and wrongful death not
independent claims).  Overall, the "trend in [our] law is
against allowing" claims under G. L. c. 229, § 2, to be
independent of the decedent's own cause of action.  Fidler
v. E.M. Parker Co., 394 Mass. 534, 547 (1985) (discussing
movement away from independent claims for wrongful death
and loss of consortium).

     iv.  Other jurisdictions.  The wrongful death statutes
in other jurisdictions and the judicial interpretations
thereof augment our conclusion.  See Doe v. Superintendent
of Schs. of Worcester, 421 Mass. 117, 130 n.4 (1995).  The
majority of States conclude that where an action for the
injuries causing the decedent's death "could not have been
brought by the deceased, had he survived, . . . no right of
action [for wrongful death] . . . can vest in the
deceased's administrator or representative for the benefit
of the beneficiaries" because "even though the right
created by the statute is a new cause of action, it is
still derivative and dependent on the continuance of a
right in the decedent to maintain an action for his injury

up to the time of his death."  12 Am. Jur. Trials, Wrongful Death Actions § 16, at 344-345 (1966).  The States following the majority rule do not provide express independent causes of action for the beneficiaries.  See, e.g., Behurst v. Crown Cork & Seal USA, Inc., 346 Or. 29, 40 (2009) (en banc) ("Only the . . . personal representative may maintain an action under" wrongful death statute).  See also In re Labatt Food Serv., L.P., 279 S.W.3d 640, 646 (Tex. 2009) ("While it is true that damages for a wrongful death action are for the exclusive benefit of the beneficiaries and are meant to compensate them for their own personal loss, the cause of action is still entirely derivative of the decedent's rights").  But see Ping v. Beverly Enters., Inc., 376 S.W.3d 581, 598 (Ky. 2012), cert. denied, 569 U.S. 954 (2013) (predispute arbitration agreement not enforceable against wrongful death claim where " wrongful death and survival actions are separate and distinct"); Gilloon v. Humana, Inc., 100 Nev. 518, 520 (1984) (wrongful death statute creates independent cause of action for heirs).

Because of the 1958 legislative amendments to G. L. c. 229, § 2, we adopt the majority rule that precludes wrongful death actions unless decedents could have brought an action for the injuries that caused their death.  There

are, however, other ways that an arbitration agreement may be invalid.

c.. Other possible grounds for invalidating arbitration agreement. i. Lack of consent. A contract generally only binds those who consent to its terms (citation omitted). See Levy v. Levy, 309 Mass. 230, 234 (1941). Jackalyn argues that even if wrongful death claims are derivative, the arbitration agreement cannot control the decedent's beneficiaries because they never consented to its terms.[15] We need not consider consent, however, because the cause of action for the injuries resulting in the decedent's wrongful death belongs to the decedent alone, and the decedent alone had the right to decide whether the beneficiaries must arbitrate those claims. The beneficiaries' lack of consent is thus inconsequential.

ii. Contract defenses under Massachusetts Arbitration Act. That we classify the wrongful death action as derivative is not necessarily dispositive of the question whether the arbitration agreement binds decedent's beneficiaries. We assess the validity of nursing home arbitration agreements pursuant to the Federal Arbitration

---

[15] There are common-law rules for binding nonsignatory third parties to a contract. See Machado v. System4 LLC, 471 Mass. 204, 209 (2015).

Act, 9 U.S.C. §§ 1 et seq., and the Massachusetts Arbitration Act, G. L. c. 251. See <u>Miller</u> v. <u>Cotter</u>, 448 Mass. 671, 678 (2007) (applying Massachusetts Arbitration Act although "cognizant that the Federal [Arbitration] Act almost certainly applies as well"). Moreover, the Massachusetts Arbitration Act, the Federal Arbitration Act, and relevant case law all demonstrate the strong public policy in favor of arbitration in commercial disputes. See <u>id</u>. at 676. Under both acts, arbitration agreements are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." <u>St. Fleur</u> v. <u>WPI Cable Sys./Mutron</u>, 450 Mass. 345, 350 (2008), quoting 9 U.S.C. § 2. We therefore "apply generally applicable State-law contract defenses . . . to determine the validity of an arbitration agreement" even if we find it to be derivative. See <u>St. Fleur</u>, <u>supra</u>. These defenses include fraud, undue influence or duress, or unconscionability. See <u>Miller</u>, <u>supra</u> at 679. However, we have declined to adopt a "per se rule that predispute arbitration agreements in the nursing home context should be void as a matter of public policy." <u>Id</u>. at 682.

As we found in <u>Miller</u>, 448 Mass. at 679-684, the facts here, as determined by the Federal District Court judge, demonstrate no fraud, duress, undue influence, or

unconscionability.  Heathwood allowed Jackalyn to study the documents for some time before signing, and there was no evidence that she did not assent to the terms of the arbitration agreement.  The agreement also was not procedurally unconscionable, given that it clearly indicated, in bold-faced capital letters, that the agreement was not mandatory for continuing care or admission.  The agreement further advised Jackalyn to read it carefully before signing, and Heathwood provided a thirty-day revocation period.[16]

3.  Conclusion.  We answer the certified questions as follows.  We conclude that claims of statutory beneficiaries under our wrongful death statute, G. L. c. 229, § 2, are derivative of the decedent's own cause of

---

[16] Placing a loved one in a nursing home is for many, if not most, people a heart-wrenching decision. Once the decision has been made and the day arrives to register one's parent, spouse, significant other, dear friend or other family member, residents and their legal proxies may feel too overwhelmed by circumstances to comprehend complex legal language.  Prudence and good practice requires that those registering the resident explain any arbitration agreement in clear and straightforward language and provide ample time for residents, or their representatives, to decide whether to sign such an agreement. We will scrutinize arbitration agreements with particular care if admission to a nursing home is conditioned on agreeing to arbitrate any legal claims.  There are many reasons why arbitration agreements might make sense and many reasons that such agreements may raise grave concerns.  Ultimately, the appropriateness of predispute arbitration agreements between nursing homes and residents, as a general rule, is a legislative prerogative.

action, and that therefore the decedent's arbitration agreement binds those beneficiaries.  We also conclude that, in the circumstances of this case, the arbitration agreement binds the executor or administrator of the decedent's estate to arbitrate the wrongful death action on behalf of the decedent's statutory beneficiaries.

The Reporter of Decisions is to furnish attested copies of this opinion to the clerk of this court.  The clerk in turn will transmit one copy, under the seal of the court, to the clerk of the United States Court of Appeals for the First Circuit, as the answer to the questions certified, and will also transmit a copy to each party.